UNINSURED EMPLOYERS'
FUND, Appellant

v.

Matthew STANFORD; U.S. Army Cadet
Corps, Inc.; Bluegrass Area Develop-
ment District; Honorable Chris Davis,
Administrative Law Judge; and
Workers' Compensation Board, Appel-
lees

and

U.S. Army Cadet Corps, Inc.,
Cross–Appellant

v.

Matthew Stanford; Bluegrass Area De-
velopment District; Uninsured Em-
ployers' Fund Honorable Chris Davis,
Administrative Law Judge; and
Workers' Compensation Board, Cross–
Appellees.

Nos. 2011–SC–000651–WC,
2011–SC–000652–WC.

Supreme Court of Kentucky.

March 21, 2013.

Rehearing Denied June 20, 2013.

James Robert Carpenter, Office of the Attorney General, Uninsured Employers' Fund, Frankfort, KY, for Appellant/Cross–Appellee, Uninsured Employers' Fund.

Wayne C. Daub, Louisville, KY, for Appellee/Cross–Appellant, U.S. Army Cadet Corps, Inc.

Christopher P. Evensen, Louisville, KY, for Appellee/Cross–Appellee, Matthew Stanford.

Scott Mitchell Burns Brown, Stephanie Dawn Ross, Fogle Keller Purdy PLLC, Lexington, KY, for Appellee/Cross–Appellee, Bluegrass Area Development District.

## OPINION OF THE COURT

Appellant, Uninsured Employers' Fund, appeals from a decision of the Court of Appeals which held that it must reimburse Appellee, Bluegrass Area Development District ("Bluegrass"), for medical expenses and benefits paid on behalf of injured worker, Matthew Stanford. Additionally, U.S. Army Cadet Corp., Inc. ("USACC"), cross-appeals from the dismissal of their appeal as untimely filed, argues that they were not Stanford's sole employer, and argues that Stanford was not injured while in their employ. For the reasons set forth herein, we reverse the Court of Appeals and remand this matter back to the Administrative Law Judge for proceedings consistent with this opinion.

Stanford, a twenty-four-year old college graduate, participated in a summer job program administered by Bluegrass called "By Learning U Earn" ("BLUE"). The purpose of BLUE was to provide work experience for low-income and disadvantaged individuals ages sixteen through twenty-four. To further this mission, Bluegrass undertook community outreach efforts to encourage employers to sign up for the BLUE program. All employers who wished to participate had to fill out a "Worksite Application" which outlined some of the responsibilities shared between BLUE and the employer. It stated:

> [t]he youth will have the opportunity to earn minimum wage as employees of Bluegrass Area Development District. Your agency will be expected to provide basic job training in assigned job duties, supervise workers, and be able to provide enough work to complete approximately 189 hours throughout the 7 weeks of employment (average of 30 hours/week). Bluegrass will select the workers for each worksite according to the specific skills you indicate.

In addition, those individuals employed through the BLUE program were covered under Bluegrass's health and workers' compensation insurance.

USACC[1] applied to be a participating BLUE worksite. Bluegrass determined USACC qualified for the program and the parties entered into an agreement where individuals participating in BLUE could work at USACC's campus in Millersburg.

Stanford volunteered with USACC as a cadet counselor prior to entering the BLUE program. Stanford was also considered an USACC officer candidate.[2] After entering the BLUE program in the summer of 2009, Stanford continued to

---

1. USACC is a 501(c)(3) organization which aims to teach young adults the value of leading a drug-free and gang-free life through using an army cadet style program.

2. According to Colonel John Land, an official with USACC, an officer candidate is an individual who is applying to become a leader within the organization.

work as a cadet counselor for USACC. Stanford filled out a biweekly timesheet for Bluegrass to indicate the times he completed his thirty hours of work. However, Stanford's duties as a cadet counselor required that he work far more than thirty hours a week—effectively he was on call "24/7." Being a cadet counselor also required that Stanford live at the USACC campus. USACC provided Stanford with free room and board and reimbursed him for travel and other expenses incurred on behalf of the organization.

On July 21, 2009, Stanford accompanied the USACC cadets on a three-day trip to a Kentucky National Guard training facility in Armetus. On the final afternoon of the trip, the cadets were instructed to go through a "confidence" obstacle course. Stanford assisted the cadets through the course until the group reached a zip line. Unbeknownst to Stanford, the zip line at the training facility was not in proper working order and was not to be a part of the cadets' obstacle course.

Testimony regarding how or when Stanford's accident occurred differs. However, it is undisputed that Stanford fell from the zip line and suffered a permanent injury which rendered him a quadriplegic. All parties stipulate that due to his injury, Stanford is permanently and totally disabled. Stanford subsequently sought workers' compensation benefits.

The Administrative Law Judge ("ALJ"), in granting Stanford benefits, found that Stanford was primarily an employee of USACC, who served as a subcontractor for Bluegrass. Accordingly, the ALJ held that Bluegrass was an up-the-ladder contractor and would be liable for the workers' compensation payments should USACC be unable to pay. Since USACC did not carry workers' compensation insurance, Bluegrass would be responsible for the payments.

Several petitions for reconsideration were filed after the ruling. The Uninsured Employers' Fund, involved in the case because USACC was uninsured, filed a petition requesting clarification of which party is responsible for paying Stanford's benefits. Bluegrass filed a petition arguing that it was not an up-the-ladder contractor. Finally, Stanford filed a petition contending that the ALJ erred in finding there were no outstanding unpaid medical bills. USACC did not file a petition for reconsideration. The ALJ denied all of the petitions. Stanford then filed a second petition for reconsideration arguing again that the ALJ erred regarding the unpaid medical bills. The ALJ denied that petition finding that it was asking for the same relief as asked for in his first petition for reconsideration.

Bluegrass appealed to the Workers' Compensation Board. USACC also filed an appeal contesting the ruling that it was Stanford's employer. The Board held that up-the-ladder liability was not a contested issue preserved by the parties for adjudication because it was not listed on the Benefit Review Conference order. Indeed, on the Benefit Review Conference order "up-the-ladder liability" had been crossed out under the contested issue subheading. Alternatively, the Board determined that since Bluegrass was a governmental entity created under KRS 147A.050 it could not be considered a contractor for purposes of imposing up-the-ladder liability. KRS 342.610(2); *Uninsured Employers' Fund v. City of Salyersville*, 260 S.W.3d 773 (Ky.2008). The Board ultimately concluded that Bluegrass could not be held responsible for paying Stanford's benefits, and remanded the matter back to the ALJ for the entry of an order holding USACC liable. Further, the Board held that USACC must reimburse Bluegrass for all of the prior benefits it paid.

<br>

The Board also dismissed USACC's appeal as untimely because it was filed based on the timing of Stanford's second petition for reconsideration. The Board's reasoning is as follows:

> Stanford admitted in the second petition for reconsideration [that] he was seeking the same relief he sought in his first petition for reconsideration. Successive petitions for reconsideration seeking the same relief are not permitted. Had the petition been filed with [sic] 14 days of the original opinion or had the second petition dealt with a patent error in the order ruling on the first petition for reconsideration, such a petition would be proper. Here, the second petition was filed more than 14 days after the date of the original decision and the second petition did not address a new error contained in the order ruling on the first petition for reconsideration. Thus, the second petition for reconsideration was not a timely petition addressing the original decision of the ALJ. Since the second petition was not a timely petition and did not address an error first occurring in the order ruling on the first petition for reconsideration, it did not destroy the finality of the order ruling on the first petition for reconsideration. *Tube Turns Division of Chemetron v. Quiggins*, 574 S.W.2d 901 (Ky.App.1978). Because the petition for reconsideration was improper, the ALJ's order on the second petition for reconsideration was a nullity. *Stewart v. Kentucky Lottery Corp.*, 986 S.W.2d 918 (Ky.App.1998). Based upon the foregoing, USACC's appeal to the Board was not timely. USACC's appeal had to be filed by August 16, 2010 and was not filed until August 27, 2010. Thus the issues raised by USACC are not properly before the Board and its appeal must be dismissed.

The Board further stated that even if it reviewed the merits of USACC's appeal, there was "ample substantial evidence to conclude Stanford was an employee of USACC at the time of his accident and was acting within the course and scope of his employment at the time of his injury."

The Court of Appeals affirmed the Board. The court found that even though the issue of reimbursing Bluegrass had not been raised at the Benefit Review Conference, "[b]oth logically, and equitably, the issue of reimbursement is a sub-issue of any liability issue presented to either the ALJ or the Board." Since USACC was found liable for Stanford's benefits, the Court of Appeals believed reimbursing Bluegrass for past expenses "goes part and parcel with the determination." Additionally, the Court of Appeals upheld the dismissal of USACC's appeal as untimely and held that there was sufficient evidence to find that USACC was Stanford's employer.

The Unemployed Employers' Fund appealed to this Court and USACC filed a cross-appeal. We will first determine whether USACC's appeal to the Board was timely filed, and then review the other arguments presented as necessary.

## I. USACC'S APPEAL TO THE WORKERS' COMPENSATION BOARD WAS TIMELY FILED

USACC's first argument is that the Workers' Compensation Board and the Court of Appeals erred by holding that their appeal was not timely filed because it was tendered in response to Stanford's second petition for reconsideration. USACC argues that the Board's reasoning is flawed because it requires a party prior to filing an appeal to review any second or subsequent petition for reconsideration filed by another party to determine whether it will result in a ruling from the ALJ or

if it is a nullity. USACC points out that in this matter, every party responded to Stanford's second petition for reconsideration showing that it was not clear on its face that it was impermissible.

We agree that the Board erroneously dismissed USACC's appeal. KRS 342.285(1) states:

An award or order of the administrative law judge as provided in KRS 242.275, if petition for reconsideration is not filed as provided for in KRS 342.281, shall be conclusive and binding as to all questions of fact, but either party may in accordance with administrative regulations promulgated by the commissioner appeal to the Workers' Compensation Board for review of the order or award.

The plain language of KRS 342.285(1) allows a party to file an appeal from the order of an ALJ once that order is final and no petition for reconsideration is pending. *But see Whittaker v. Wright,* 969 S.W.2d 209 (Ky.1998) (holding that an appeal filed prior to the finality of an ALJ's order may be saved due to the doctrine of relation forward). As soon as Stanford filed the second petition for reconsideration, it stayed the finality of the ALJ's order and award and tolled the time for a party to file an appeal. It is unimportant that Stanford's second petition for reconsideration failed to raise a new allegation of error. The validity of Stanford's second petition for reconsideration could only be determined by the ALJ and it is only after he has either dismissed or ruled on the petition that a party can say with any certainty that the petition was meritless or as the Board put it, a "nullity." It is unfair to place the burden of guessing the success or validity of a subsequent petition for reconsideration upon the opposing party.

In response, Bluegrass argues that the Board's ruling in this matter "perpetuates an orderly appellate process." They argue that holding that USACC's appeal was timely will create a slippery slope because it allows a party to destroy the finality of opinions and orders by the filing of successive petitions for reconsideration requesting identical relief. A party would presumably do this to improperly extend their time to file an appeal. We agree with Bluegrass, but only to the extent that the party filing the successive petitions for reconsideration is the party filing an appeal. In this matter it was Stanford who filed the improper petition for reconsideration and USACC should not be punished for Stanford's action.

Bluegrass also argues that USACC's appeal should be dismissed because it did not file a petition for reconsideration to challenge the ALJ's factual findings and accordingly waived its right to contest those findings. It is true that a party must preserve their right to contest an ALJ's factual findings through a petition for reconsideration. KRS 342.281; *Eaton Axle Corp. v. Nally,* 688 S.W.2d 334 (Ky.1985). However, USACC's appeal primarily contests the manner in which the ALJ applied the law to those findings. An appeal based on the contention that an ALJ misapplied the law is allowable, even if that party did not file a petition for reconsideration. *See Brasch–Barry Gen. Contractors v. Jones,* 175 S.W.3d 81, 83 (Ky.2005) ("Pursuant to our interpretation of KRS 342.285 and the plain language contained therein, issues regarding questions of law need not be preserved pursuant to a petition for reconsideration, but rather, may be appealed directly to the Board.")

Since USACC timely filed its notice of appeal after the order denying Stanford's second petition for reconsideration, we find that the Board erred by dismissing it. Since both the Board and Court of Appeals

did purportedly review the merits of USACC's appeal even after dismissing it, we need not remand this matter back for further consideration. We will now address the issues raised in USACC's appeal.

## II. BLUEGRASS WAS STANFORD'S GENERAL EMPLOYER AND USACC HIS SPECIAL EMPLOYER THROUGH THE LOANED SERVANT DOCTRINE

USACC argues that the Board erred by holding that it was Stanford's sole employer at the time of his accident. They contend that the Board should have found that at a minimum Stanford was engaged in dual employment for both USACC and Bluegrass because his work furthered the goals of both entities.

The ALJ originally determined that Stanford was primarily employed by USACC but that Bluegrass was an up-the-ladder contractor. He reasoned that:

> in order to fulfill their primary purpose Bluegrass *sub-contracted* with [USACC], an otherwise separate legal entity, and agreed to provide a portion of the [USACC]'s salary requirements. It is clear that for Kentucky Workers' Compensation purposes, as it relates to this claim, that [USACC] is a sub-contractor of Bluegrass and Bluegrass retains up-the-ladder liability.

(emphasis in original).

The Workers' Compensation Board however reversed the ALJ's decision. The Board stated that not only was the issue of up-the-ladder liability not preserved as a contested issue in the Benefits Review Conference ("BRC") but that:

> Bluegrass is correct in its argument that it cannot have up-the-ladder liability pursuant to KRS 342.610(2) because it is not a 'person' for purposes of that statute ... [since] Bluegrass is a governmental entity created by the Legislature in KRS 147A.050. *Uninsured Employers' Fund v. City of Salyersville* is controlling and Bluegrass cannot be assessed up-the-ladder liability nor can it be deemed a contractor.

The Board concluded there was sufficient evidence that USACC was Stanford's employer and was primarily liable for all workers compensation benefits.

The Board is correct that Bluegrass cannot be held liable as an up-the-ladder contractor and that up-the-ladder liability was not a contested issue at the BRC. However, we find that the facts of this matter do lead to the conclusion that Bluegrass shares responsibility with USACC as Stanford's employer and may be held responsible to pay his workers' compensation benefits.

■ Stanford's employment situation with Bluegrass and USACC provides an example of the loaned employee doctrine. The loaned employee doctrine permits the direct employee of one business (general employer) to be considered an employee of another business (special employer) and, thus, both businesses share the responsibility of being the worker's employer, if three basic tests of an employment relationship are present: 1.) an express or implied contract of hire exists between the employee and the special employer; 2.) the employee performs work for the special employer; and 3.) the special employer has the right to control the work that the employee performs. *Labor Ready, Inc. v. Johnston,* 289 S.W.3d 200, 206 (Ky.2009).

■ In this matter, Bluegrass served as Stanford's general employer. Bluegrass determined that Stanford qualified to be a participant in the BLUE program and then hired him. Stanford in return agreed to abide by the terms of the BLUE program and work for a certain number of hours in exchange for an hourly wage and

insurance benefits. Bluegrass then assigned (or lent) Stanford to work for USACC. While Stanford previously volunteered with USACC and wanted to be placed with that organization, Bluegrass could have refused to honor that request.

Support for this conclusion comes from the language of the BLUE program "Worksite Agreement" between Bluegrass and USACC. The stated purpose of the agreement was "to formalize the arrangement between the Contractor [Bluegrass] and the Provider [USACC] whereby a customer [Stanford] may receive supervised, short term work." The Worksite Agreement also provided certain responsibilities that USACC would have to perform in exchange for accepting the BLUE program employees. As such, it seems clear that Stanford was an employee of Bluegrass, through the auspices of the BLUE program, and was "lent" to USACC. As Stanford's employer, there is a presumption that Bluegrass may be held responsible for paying his workers' compensation benefits.

■ We note that applying the loaned employee doctrine leads to the conclusion that USACC has liability for workers' compensation benefits as Stanford's special employer. By choosing to volunteer with USACC and then continuing that service as an employee of BLUE, Stanford entered into a contract for hire with USACC. The work Stanford performed as a cadet counselor while working with USACC was undoubtedly the work of that organization. USACC also controlled virtually all of the details of the work Stanford performed, including the hours worked, the types of activities performed, and the site of the work. Thus, USACC serves as Stanford's special employer.

Because we find that Bluegrass and USACC were both Stanford's employers through the loaned employee doctrine, this matter must be remanded back to the ALJ for entry of an order allocating responsibility for Stanford's benefits between the parties. We now will address the remaining issues on appeal which could aid the ALJ on remand.

## III. STANFORD WAS ACTING WITHIN THE SCOPE OF HIS EMPLOYMENT WHEN INJURED

USACC next argues that at the time Stanford was injured he was not acting within the scope of his employment because riding the zip line was not part of his job duties. Instead they contend that Stanford's duties on the day of the accident only consisted of observing and motivating the cadets as they proceeded through the obstacle course. Any type of demonstration for the cadets on how to use the zip line would have been performed by trained professionals. USACC believes that Stanford rode down the zip line for his own enjoyment.

■ While it is true that Stanford's supervisors did not order him to ride down the zip line, we cannot find that the ALJ erred by finding that Stanford was acting within the scope of his employment at the time of the accident. The record indicates that cadet counselors would frequently participate in activities with cadets to encourage and motivate them. One of Stanford's supervisors, Sergeant Wyland, was present at the time of the accident and allowed another cadet counselor to ride down the zip line before Stanford. He did not order either Stanford or his co-counselor to not ride down the zip line. There is sufficient evidence in the record to indicate that Stanford was acting within the scope of his employment at the time he was injured and he is therefore eligible for workers' compensation benefits.

## CONCLUSION

The Uninsured Employers' Fund initially filed this appeal to challenge the Court of Appeals' decision which ordered it to reimburse Bluegrass for the medical expenses Bluegrass paid on behalf of Stanford. However, because Bluegrass and USACC both served as Stanford's employers due to the loaned employee doctrine, we need not reach the merits of the UEF's appeal. The determination of which employer is liable for what proportion of Stanford's benefits must be recalculated. Instead we reverse the decision of the Court of Appeals and remand this matter back to the ALJ for the entry of an order consistent with this opinion.

MINTON, C.J.; ABRAMSON, CUNNINGHAM, NOBLE, SCOTT, and VENTERS, JJ., sitting. All concur.