**Robert L. WHITTAKER, Director of Special Fund, Appellant,**

v.

**Murray ROWLAND; Field Packing Company; Sheila C. Lowther, Administrative Law Judge; and Workers' Compensation Board, Appellees.**

and

**Field Packing Company, Appellant,**

v.

**Murray Rowland; Special Fund; Sheila C. Lowther, Administrative Law Judge; and Workers' Compensation Board, Appellees.**

Nos. 99–SC–0003–WC, 99–SC–0153–WC.

Supreme Court of Kentucky.

Aug. 26, 1999.

David R. Allen, Joel D. Zakem, Louisville, for Whittaker/Special Fund.

John H. Helmers, Owensboro, for Field Packing Co.

Christopher G. Safreed, Moore, Malone, & Safreed, Owensboro, for Rowland.

## OPINION OF THE COURT

This workers' compensation appeal concerns whether there was substantial evidence at reopening to support increasing a settled award to one for total disability. It also concerns the proper method for crediting payments made pursuant to the settlement.

Claimant was a 63–year–old maintenance worker with an eighth grade education. He fell and injured his back at work in February, 1987. He underwent back surgery by Dr. Kavolus in November, 1989, after which he returned to work for approximately ten months up until December, 1990. On July 24, 1991, he filed a workers' compensation claim in which he alleged a permanent, partial occupational disability due to the back injury. The claim was settled with the defendants in December, 1991, for a 28.84% occupational disability which was paid in a lump sum of $25,646.00. Liability was apportioned 68.5% to the employer and 31.5% to the Special Fund.

In June, 1992, claimant was referred to Dr. Madauss, a neurosurgeon, who performed a spinal fusion in November of that year; however, claimant's condition continued to worsen. He applied for and was awarded Social Security Disability which was dated back to his last employment in December, 1990. Claimant underwent a second spinal fusion in 1994 and testified that after that point he was unable to perform even the most sedentary tasks. After a prior motion to reopen was dismissed for regulatory noncompliance, the present motion was filed on July 3, 1996.

At reopening, the employer's human resources director indicated his belief that claimant was capable of holding other employment at the time he quit work. Claimant and his wife testified concerning various activities which he was able to perform at the time of settlement and could not perform at reopening. In his deposition, claimant testified that he had never been able to return to work after leaving the employment; however, at the hearing, he denied that he had been totally disabled the entire time. Claimant also offered testimony from Dr. Madauss concerning the change in his medical condition, including testimony that he had never released claimant to return to work. The employer offered no medical evidence.

After noting that it was a difficult case, the Administrative Law Judge (ALJ) de-

termined that claimant had been 40% disabled at settlement, that his condition had worsened dramatically thereafter, that his present occupational disability was 100%, and that the 100% disability award should be apportioned equally between the defendants. Benefits were commenced as of July 3, 1996. As amended pursuant to petitions for rehearing by the employer and the Special Fund, the award indicated that claimant was temporarily totally disabled during the period between the injury and his return to work in February, 1990, at which point his permanent occupational disability was 40%. The defendants were permitted to credit the applicable benefit for a 40% permanent, partial occupational disability against the benefit for total disability during the weeks in which the 425–week period of permanent, partial disability which was covered by the settlement overlapped the period of permanent, total disability. The ALJ indicated that at the end of the 425–week period, claimant was entitled to receive the full benefit for permanent, total disability. Each defendant was ordered to pay its proportional share of the additional benefits. The decision was affirmed by the Workers' Compensation Board (Board) and the Court of Appeals. These appeals by the Special Fund and the employer followed.

The employer asserts that there was no substantial evidence to support the finding of an increase in occupational disability. The Special Fund and the employer both assert that claimant waived the compensability of 40% of his ultimate disability by settling the initial claim and that credit for the proceeds of the settlement should equal 40% of a permanent, total disability award for its entire duration. Claimant responds that there was substantial evidence to support the findings of 40% disability at settlement and 100% disability at reopening. He also asserts that there is no authority for the position of the Special Fund with regard to the question of a credit. He points to the finding that, at settlement, he had sustained a 40% permanent, partial disability and notes that the

credit which the ALJ permitted against the ultimate award was for a 40% permanent, partial disability.

■ The claimant bears the burden of proof and risk of nonpersuasion before the fact-finder with regard to every element of the claim. *Wolf Creek Collieries v. Crum,* Ky.App., 673 S.W.2d 735 (1984); *Snawder v. Stice,* Ky.App., 576 S.W.2d 276 (1979); *Roark v. Alva Coal Corporation,* Ky., 371 S.W.2d 856 (1963). Although KRS 342.285 permits the appeal of the ALJ's decision to the Board, it provides that the ALJ's decision is "conclusive and binding as to all questions of fact" and that the Board "shall not substitute its judgment for that of the [ALJ] as to the weight of evidence on questions of fact." KRS 342.290 limits the scope of review by the Court of Appeals to that of the Board and also to errors of law arising before the Board.

■ It is clear that the parties are entitled to a sufficient explanation by the ALJ of the basis for the decision. *Big Sandy Community Action Program v. Chaffins,* Ky., 502 S.W.2d 526 (1973); *Shields v. Pittsburgh & Midway Coal Mining Co.,* Ky.App., 634 S.W.2d 440 (1982). However, this Court has construed KRS 342.285 to mean that the fact-finder, rather than the reviewing court, has the sole discretion to determine the quality, character, and substance of evidence [*Paramount Foods, Inc. v. Burkhardt,* Ky., 695 S.W.2d 418 (1985)]; that an ALJ, as fact-finder, may reject any testimony and believe or disbelieve various parts of the evidence, regardless of whether it came from the same witness or the same adversary party's total proof [*Caudill v. Maloney's Discount Stores,* Ky., 560 S.W.2d 15, 16 (1977) ]; and that where the party with the burden of proof was successful before the ALJ, the issue on appeal is whether substantial evidence supported the ALJ's conclusion [*Special Fund v. Francis,* Ky., 708 S.W.2d 641 (1986) ]. Substantial evidence has been defined as some evidence of substance and relevant

consequence, having the fitness to induce conviction in the minds of reasonable men. *Smyzer v. B.F. Goodrich Chemical Co.*, Ky., 474 S.W.2d 367 (1971). Although a party may note evidence which would have supported a conclusion contrary to the ALJ's decision, such evidence is not an adequate basis for reversal on appeal. *McCloud v. Beth–Elkhorn Corp.*, Ky., 514 S.W.2d 46 (1974).

■ More recently, in *Western Baptist Hospital v. Kelly*, Ky., 827 S.W.2d 685 (1992), we addressed the standard of review to be employed by the Court of Appeals and the Supreme Court in light of the decision in *Vessels v. Brown Forman Distillers Corp.*, Ky., 793 S.W.2d 795 (1990). In *Kelly*, the Board and the Court of Appeals were in agreement that a finding of fact was erroneous and that a decision in the worker's favor was compelled. The matter was appealed to this Court; however, we refused to engage in yet a third in-depth review of the evidence. We explained that the appellants had pointed to no evidence which the Board and the Court of Appeals had overlooked or misunderstood, that they had failed to demonstrate that the view of the evidence which was taken by the Board and the Court of Appeals was either patently unreasonable or flagrantly implausible, and they had failed to demonstrate that a controlling statute or precedent was overlooked or misconstrued. We explained that, under those circumstances, it was not our function as an appellate court to reverse the Court of Appeals' decision. *Kelly* serves to remind parties of the longstanding principles that it is not the function of an appellate court to reweigh the evidence on a question of fact, that only those findings of fact which are erroneous as a matter of law are properly reversed on appeal, and that, with regard to issues of fact, only those decisions of the Court of Appeals which are erroneous as a matter of law will be reversed by this Court.

Here, the evidence was conflicting, and the ALJ's findings in claimant's favor have been affirmed by both the Board and the Court of Appeals. We have reviewed the opinions below, the evidence, and the employer's assertions concerning why the findings are not properly supported by the evidence. Having done so, we are not persuaded that a decision in the defendants' favor was compelled. The employer has failed to convince us that any relevant evidence was overlooked or misunderstood. The view of the evidence which was taken by the ALJ, the Board and the Court of Appeals was neither patently unreasonable nor flagrantly implausible, and we are not persuaded that any controlling statute or precedent was overlooked, misapplied, or misconstrued.

■ With regard to the question of credit, it must be remembered that this appeal does not concern the reopening of a litigated award. The parties agreed to the terms by which they would settle the claim for the underlying injury, and upon claimant's receipt of the agreed-upon sum, the liability of the employer and the Special Fund for whatever occupational disability existed at the time of settlement was extinguished. The figure for occupational disability which is contained in a settlement agreement represents a compromise and might or might not equal the worker's actual occupational disability at the time; therefore, additional benefits are authorized at the reopening of the settled claim only to the extent of an actual increase in the worker's occupational disability. See *Newberg v. Davis*, Ky., 841 S.W.2d 164, 166 (1992); *Newberg v. Chumley*, Ky., 824 S.W.2d 413, 416 (1992). For that reason, of greater significance than the figures contained in the agreement to settle the claim were the ALJ's findings that claimant's actual occupational disability at settlement was 40% and that his disability at reopening was 100%.

■ When considering the arguments which have been raised and the standard for reopening a settled award which was set forth in *Newberg v. Davis*, it is useful

to focus on the amount of additional benefits to which claimant became entitled at reopening and the 40% permanent, partial disability which was compromised in the settlement. The defendants are reminded that the rates and limitations on benefits for partial and total disability are different. Claimant's actual occupational disability at settlement was 40%; therefore, it was the benefit for a 40% permanent, partial disability that was compromised for the lump sum, not 40% of the benefit for a permanent, total disability. Coordination of the settlement with the award to which claimant became entitled at reopening should both give effect to the settlement and compensate claimant for the increase in his occupational disability which occurred after the settlement. Applying the findings which were made by the ALJ, we conclude that in exchange for complying with their obligations under the settlement, the defendants were entitled to a credit against the award of total disability in an amount which equaled: the applicable statutory benefit for a 40% permanent, partial disability multiplied by the number of weeks which remained in the 425–week period of partial disability which began on February 1, 1990. Stated otherwise, the lump sum fully compensated claimant for a 40% permanent, partial disability; therefore, to the extent that the 425–week period of permanent, partial disability which began on February 1, 1990, overlapped the subsequent period of total disability which began on July 3, 1996, claimant was entitled to receive: the applicable statutory benefit for total disability, less the statutory benefit for the 40% permanent, partial disability which was compromised by the settlement. After the expiration of the overlapping period, claimant was entitled to receive the statutory benefit for total disability. Each defendant was required to pay its proportional share of the additional benefits awarded at reopening. We conclude, therefore, that the ALJ's determination was correct.

The decision of the Court of Appeals is affirmed.

All concur.