# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.



## Supreme Court of Kentucky

2019-SC-000214-WC

R & T ACOUSTICS            APPELLANT

ON APPEAL FROM COURT OF APPEALS
V.            CASE NO. 2018-CA-001277-WC
WORKERS' COMPENSATION BOARD NO. 15-WC-00236

BERNABE AGUIRRE; HON. STEPHANIE            APPELLEES
L. KINNEY, ADMINISTRATIVE LAW JUDGE;
AND WORKERS' COMPENSATION BOARD

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

R & T Acoustics (R & T) appeals from the Court of Appeals' decision affirming the Workers' Compensation Board's reversal of an Administrative Law Judge's (ALJ) dismissal of Bernabe Aguirre's workers' compensation claim. Aguirre suffered a work-related injury and sought immediate treatment at a healthcare facility where his urine sample tested positive for cocaine. In defending the claim, R & T, a subcontractor that had contracted with Aguirre's direct employer, argued that Aguirre's voluntary intoxication at the time of the injury relieved them of liability pursuant to Kentucky Revised Statute (KRS) 342.610(3).[1] R & T argues that the ALJ's dismissal, due to Aguirre's voluntary

---

[1] We note that the standard for the affirmative defense of voluntary intoxication has changed since the inception of this case. While KRS 342.610(3) previously

intoxication, was supported by substantial evidence and that the Board usurped the ALJ's fact-finding authority. After review of the record, we find that the Board properly reversed the ALJ's decision and therefore we affirm the Court of Appeals.

## FACTS AND PROCEDURAL HISTORY

In 2013 Aguirre began working for National Drywall, LLC[2] performing framing work and installing sheetrock at a factory in Georgia. He performed this job for three months, until National Drywall was hired to build several stores in Louisville, Kentucky. Aguirre moved to Louisville in July 2014 where his work hours ranged from 40-66 hours per week and he was paid $19.00 per hour.

On December 18, 2014, Aguirre was instructed to go onto the roof of a store to open some holes near the store sign, which was approximately fifteen

---

required an employer to prove that a work injury was "proximately caused primarily" by the employee's voluntary intoxication, an amended version of KRS 342.610, effective July 14, 2018, now provides: "If an employee voluntarily introduced an illegal, nonprescribed substance . . . into his or her body detected in the blood, as measured by a scientifically reliable test, that could cause a disturbance of mental or physical capacities, it shall be presumed that the illegal, nonprescribed substance . . . caused the injury . . . ." KRS 342.610(4). This amended version of KRS 342.610 creates a presumption that an illegal, nonprescribed substance found in an employee's blood is the cause of that employee's work injury, thereby shifting the burden from the employer to the employee. The employee must prove that the intoxication did not cause the work injury.

[2] Initially, Aguirre named National Drywall, LLC as the employer and also named the Uninsured Employers Fund as a defendant in his workers' compensation claim. A few months after initiating the claim GBT Realty Corporation and The Stewart Perry Company were joined as defendants. R & T Acoustics, who was alleged to be the subcontractor that hired National Drywall, was the last party to join this claim. R & T filed a motion to dismiss the other party defendants and acknowledged that it was an "up-the-ladder" employer pursuant to KRS 342.610(2).

2

feet off the ground. He got an extension ladder, set it up on the roof and began climbing toward the top of the sign. As he got to the top, the ladder slipped and one of the rungs caught his right foot at the ankle. He fell, landing on his right side, was in severe pain, and later testified that he lost his vision. As a result of the fall, he injured his right foot, left knee and right shoulder.

Aguirre received treatment at an urgent care center in Louisville immediately following the work accident. He complained of severe pain in his right foot and ankle. The records indicated that Aguirre had right ankle swelling, bruising, and a decreased range of motion on examination. His right foot had normal range of motion and no swelling, but it was tender. X-rays revealed that his right foot was fractured. Aguirre was referred to an orthopedic surgeon, given an ankle splint air cast and crutches. Additionally, during this treatment Aguirre submitted a urine sample for a drug screen, which resulted in a positive cocaine metabolite test.

Aguirre testified by deposition and at the final hearing, using an interpreter, and described the incident in his own words. He provided the names of several National Drywall employees that were also on the worksite at the time of his injury. He stated that none of his co-workers witnessed the accident, and he refused to answer questions regarding his use of cocaine, asserting his Fifth Amendment privilege against self-incrimination.

In response to Aguirre's claim for workers' compensation benefits, R & T raised the affirmative defense of voluntary intoxication pursuant to the version of KRS 342.610(3) then in effect, which stated that "[l]iability for compensation

shall not apply where injury . . . to the employee was proximately caused primarily by voluntary intoxication as defined in KRS 501.010 . . . ."

Aguirre filed the medical records of Dr. Jules Barefoot, who conducted an Independent Medical Evaluation (IME) on December 16, 2015, at the request of Aguirre's attorney. He diagnosed Aguirre with multiple fractures of the ankle and foot. Dr. Barefoot assigned Aguirre a whole person impairment rating of 7% and did not provide any opinion regarding cocaine or intoxication.

In addition to the records from Aguirre's urgent care visit, R & T also submitted the IME report of Dr. Richard Sheridan, an orthopedic surgeon, who assessed a 7% whole person impairment for Aguirre's ankle and foot injuries. Regarding intoxication, Dr. Sheridan opined:

> From a medical standpoint, the presence of cocaine in Mr. Aguirre's body could undermine his ability to perform his work duties safely. The presence of cocaine in the quantities documented could have been a significant contributing factor in his injury. It could have caused his injury to be worse than if he had not been impaired.

R & T also submitted the report of Dr. Saeed Jortani, a clinical chemist and forensic toxicologist. Dr. Jortani reviewed Aguirre's medical records, deposition testimony, and textbooks relating to the effects of cocaine. On the issue of intoxication and the work accident, Dr. Jortani stated:

> [T]here is no information on the last time he ingested cocaine nor is it known whether he is a frequent abuser of cocaine or he uses it sporadically and occasionally. Since we do not have a blood test for cocaine and its metabolite testing, it is not feasible to establish whether the positive test was due to a recent ingestion or use of cocaine the day before!

4

Dr. Jortani also provided a synopsis of the effects of cocaine ingestion, stating that cocaine use can result in abnormal brain function, including impairments in attention, reaction time and cognition. Additionally, cocaine abuse can cause decrements in psychomotor speed, visuoperception, executive function and dexterity. Dr. Jortani also stated:

> Positive cocaine metabolite test signifies ingestion during the period of 1 hour all the way back to 24 hours prior to the accident. . . . If Mr. Aguirre had ingested cocaine within a couple of hours prior to the accident, he would have been expected to be under the acute effects of cocaine intoxication. In this situation, cocaine is expected to result in the above-mentioned impairments. Another scenario is that he had ingested cocaine 2-5 hours prior to the accident. During this time, the person experiences the post cocaine crash period, which results in central nervous system depression. Obviously, if cocaine had been ingested prior to these two periods, the likelihood of acute effects of cocaine ingestion is less. In cocaine abusers, recent evidence also suggests that its chronic effects on the brain function persist even during the period of abstinence following the last use . . . .

> Keeping in mind the result of the testing of his urine on the sample collected at the Norton Care Center, it is my opinion with reasonable scientific probability that he was more likely than not an active user of cocaine. What is not clear here is the time of last ingestion as well as the frequency of abuse. If we had these two pieces of information, it would be feasible to establish whether the voluntary ingestion of cocaine as demonstrated by the urine positive test result was the proximate cause of the injury as the result of his fall on December 18, 2014. Not having the information, we can only conclude that by ingesting cocaine at some point during the period of 1-24 hours prior to testing, Mr. Aguirre put himself at greater risk of falling while being on the top of the ladder and the resulting fall and injuries.

At the time of his deposition, Aguirre continued to have pain and swelling in his foot. He continued to experience pain in his left knee and claimed he could not raise his right arm above shoulder level. In October 2015 he returned to work with another construction company, performing similar work

as he did at the time of his work injury. However, he said he is not physically capable of climbing ladders so he does not. He also stated he cannot walk long distances or lift heavy items.

After reviewing the medical evidence, the ALJ rendered a decision on August 22, 2016. The ALJ found that Aguirre's work accident was caused by his voluntary ingestion of cocaine. In reaching her conclusion, the ALJ relied on the positive urine drug screen and the opinions of Drs. Jortani and Sheridan. The ALJ dismissed Aguirre's claim and Aguirre did not file a petition for reconsideration.

On appeal, the Board vacated the ALJ's decision and remanded the claim for additional findings. Upon review of the opinions of Drs. Jortani and Sheridan, the Board concluded that those opinions did not support a finding that Aguirre's cocaine use was the proximate cause primarily leading to the accident. The Board found that both opinions were equivocal, and therefore did not meet the standard of proof for the affirmative defense of voluntary intoxication pursuant to KRS 342.610(3). The ALJ's mere statement that she relied upon the two opinions was insufficient, and the claim was remanded for determination of whether the opinions, in conjunction with the other evidence of record, satisfy the voluntary intoxication standard.

One Board member concurred in result only and concluded that the ALJ's opinion should be reversed entirely. The Board member agreed that neither physician's opinion established Aguirre's level of intoxication at the time of the accident or that the intoxication directly caused the accident.

6

Further, there was no independent lay testimony concerning Aguirre's behavior or the circumstances of the accident. Because the proof did not constitute substantial evidence, the Board member would have reversed the ALJ's opinion and remanded the claim for further adjudication.

On remand, the ALJ found that Aguirre's voluntary ingestion of cocaine proximately caused the work incident. The ALJ relied on the opinions of Drs. Jortani and Sheridan, as well as the lack of any explanation as to why a non-deficient ladder, under normal weather conditions, would slip. Additionally, there was no indication in the testimony that the grade of the roof Aguirre was working on made it difficult for him to secure the ladder. "In other words, there was no reasonable explanation to elucidate why the ladder slipped as [Aguirre] climbed the rungs." The ALJ concluded that Aguirre's voluntary intoxication was a primary cause of the work accident and again dismissed the claim. Aguirre filed a petition for reconsideration which was denied on April 24, 2018.

Aguirre appealed to the Board and argued that the record lacked substantial evidence to support the ALJ's determination. Finding that the ALJ failed to identify other evidence in the record to satisfy the standard set forth in KRS 342.610(3), the Board reversed the dismissal of Aguirre's claim and remanded the claim for resolution of all remaining issues. The Board noted that the ALJ's observations regarding the absence of alternative explanations as to why Aguirre slipped were "mere suppositions" unsupported by the evidence. While R & T satisfied its burden of proving Aguirre was intoxicated at

the time of the accident, the ALJ was unable to identify additional evidence to establish that the cocaine ingestion was the proximate cause primarily leading to the accident pursuant to KRS 342.610(3). The Board characterized the ALJ's additional findings as "speculative at best," and concluded that R & T failed to "affirmatively introduce evidence" to establish the required causation. The Board remanded the claim to the ALJ to resolve the remaining issues on the merits.

R & T appealed the Board's decision to the Court of Appeals, arguing that the Board impermissibly substituted its judgment for that of the ALJ. In order to correct the Board, the Court of Appeals must find that it "overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Western Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992). After review of the record, the Court of Appeals could not find an error sufficient to require reversal. The Court of Appeals affirmed the Board's decision.

R & T appeals the Court of Appeals' decision, arguing that the ALJ complied with the Board's directive on remand and appropriately drew inferences from the evidence in concluding that Aguirre's voluntary cocaine ingestion proximately caused his work injury. Finding that the record lacks substantial evidence to support the ALJ's findings, we affirm the Court of Appeals.

8

## ANALYSIS

The sole issue is whether substantial evidence supported the ALJ's dismissal of Aguirre's claim due to his voluntary intoxication. From its inception, the Workers' Compensation Act promotes the premise that "a worker's negligence will not defeat a claim for a resulting injury." *Campbell v. City of Booneville*, 85 S.W.3d 603, 606 (Ky. 2002). However, if the worker's negligence stems from intoxication, the Act allows the employer to raise the worker's intoxication as a defense to the claim. Specifically, KRS 342.610(3) relieves an employer from liability for compensation if a worker's injury is "proximately caused primarily by voluntary intoxication as defined in KRS 501.010." KRS 501.010(2) defines intoxication as a "disturbance of mental or physical capacities resulting from the introduction of substances into the body." Voluntary intoxication is "intoxication caused by substances which the defendant knowingly introduces into his body, the tendency of which to cause intoxication he knows or ought to know, unless he introduces them pursuant to medical advice or under such duress as would afford a defense to a charge of crime." KRS 501.010(4). The employer bears the burden of proof for the affirmative defense of voluntary intoxication. *Wolf Creek Collieries v. Crum*, 673 S.W.2d 735, 736 (Ky. App. 1984).

On appellate review, this Court must determine whether substantial evidence of probative value supports the ALJ's findings. *Whittaker v. Rowland*, 998 S.W.2d 479, 481-82 (Ky. 1999). Substantial evidence is evidence of "substance and relevant consequence" having fitness to induce conviction in

9

the minds of reasonable people. *Miller v. Tema Isenmann, Inc.,* 542 S.W.3d 265, 270 (Ky. 2018).

The ALJ, as fact finder, has "the sole authority to judge the weight, credibility and inferences to be drawn from the record." *Miller v. East Kentucky Beverage/Pepsico, Inc.,* 951 S.W.2d 329, 331 (Ky. 1997). But despite this authority, there must be substantial evidence supporting the decision. In Aguirre's initial appeal, the Board remanded, directing the ALJ to determine whether the opinions of Drs. Jortani and Sheridan, in concert with other evidence of record, satisfy the standard set forth in KRS 342.610(3). On remand, the ALJ made additional findings as instructed, but these findings do not rise to the level of substantial evidence. The ALJ noted that weather conditions were normal and that there was no indication that the grade of the roof Aguirre was working on made it difficult to secure the ladder. Additionally, Aguirre did not indicate that the ladder was unsteady and there are no witnesses that can offer additional information about the accident. The ALJ relied on the absence of facts, *i.e.,* lack of proof that the ladder was deficient or that other conditions existed that could explain the fall.

A lack of evidence does not meet the required standard of substantial evidence. As the Board stated, these observations by the ALJ are mere suppositions which are not supported by the evidence. The ALJ's additional findings were speculative at best and do not support dismissing Aguirre's claim. R & T bore the burden of proving that Aguirre was intoxicated, and his intoxication was the primary causal factor in the accident. While R & T

10

successfully proved that Aguirre was intoxicated, R & T did not prove that the intoxication was the primary causal factor in the accident. By relying on a lack of alternative evidence as to why Aguirre slipped off the ladder, the ALJ has improperly removed R & T's burden of proving that Aguirre's injury was proximately caused primarily by his intoxication and instead suggested that Aguirre should have provided an alternative explanation for his accident. That is not what our law requires.

R & T urges the Court to follow a rule set forth in *Jackson v. General Refractories Company*, 581 S.W.2d 10, 11 (Ky. 1979), which states that "[w]hen one of two reasonable inferences may be drawn from the evidence, the finders of fact may choose." According to R & T, there were two permissible inferences that could be drawn from the evidence in this case: (1) Aguirre did not ingest cocaine within a period prior to his fall sufficient to have any impact on his ability to safely climb and work on a ladder, or (2) Aguirre did ingest cocaine within a period prior to his fall sufficient to have a significant impact on his ability to safely climb and work on a ladder. While the ALJ chose to draw the second inference, this inference is not supported by the record. R & T correctly asserts that Aguirre submitted no evidence that he was *not* intoxicated at the time of the accident. Under KRS 342.610(3) an injured worker does not have the burden to disprove the cause of an accident. An ALJ's inference must be reasonable, and the fact that a party, who did not bear a burden of proof, did not provide an alternative explanation for an accident cannot be the basis of a "reasonable" inference.

11

The ALJ relied on Dr. Jortani, who stated it "*would* be feasible to establish whether the voluntary ingestion of cocaine as demonstrated by the urine positive test result was the proximate cause of the injury" if the time of last ingestion as well as the frequency of Aguirre's cocaine abuse was known. (Emphasis added.) Dr. Jortani acknowledged that this information was unknown. He stated that the only conclusion that can be drawn from the information known is "that by ingesting cocaine at some point during the 1-24 hour period prior to testing, Aguirre put himself at greater risk of falling while being on top of the ladder."

Similarly, Dr. Sheridan was non-committal in his report stating that the presence of cocaine in Aguirre's system *could* undermine his ability to perform his work duties safely, *could have been* a significant contributing factor in his injury, and *could have caused* his injury to be worse than if he had not been impaired. (Emphasis added.)

These opinions are equivocal and simply do not meet the standard of proof set forth in KRS 342.610(3). The ALJ must utilize the evidence in the record and find that the proximate cause primarily leading to Aguirre's accident was his cocaine use. Neither doctor's opinion establishes Aguirre's level of intoxication at the time of the accident nor expresses the opinion that intoxication was the proximate cause of the accident.[3] The ALJ's mere

---

[3] In the concurrence in result only of the Board's first opinion on appeal, one panel member points to *Western Kentucky Door v. Cross*, 2013 WL 764666 (Ky. App. 2013) in which Dr. Jortani offered the expert opinion that a claimant's intoxication was "voluntary and the primary proximate cause of his injuries."

statement (in the first opinion) that she relied upon the opinions of Drs. Jortani and Sheridan to conclude that the cocaine in Aguirre's system caused his work injury is insufficient because the doctors' opinions were equivocal at best. The Board originally held that the doctors' opinions alone do not meet the standard of proof for the affirmative defense of voluntary intoxication, and we agree. On remand the ALJ made few additional findings, none of which constitute substantial evidence.

R & T argues that this Court should apply a standard set forth in *Woosley v. Central Uniform Rental*, 463 S.W.2d 345 (Ky. 1971), and criticizes the Court of Appeals' failure to follow the decision. In *Woosley*, an employee was killed when he drove his employer's truck off the highway, striking an embankment. *Id.* at 346. A blood sample indicated that the employee had a blood alcohol content of 0.25% at the time of death and the employer asserted the affirmative defense of voluntary intoxication. *Id.* In applying a prior version of KRS 342.610(3),[4] our predecessor Court held that "if the accident would not have happened but for the intoxication, then it was caused by the intoxication." *Woosley*, 463 S.W.2d at 347.

The *Woosley* Court was called upon to interpret the statutory meaning of "caused by" in the context of voluntary intoxication. The Court held that

---

[4] At the time *Woosley* was decided, the statute in effect was KRS 342.015(3), which provided that no compensation may be paid for the injury or death of an employee "caused by a willful, self-inflicted injury, willful misconduct or intoxication of such employe[e]." *Woosley*, 463 S.W.2d at 347.

13

"caused by" meant "proximate cause," but not the sole or primary proximate cause, explaining

> there may be more than one proximate cause, and we are not persuaded that our statute may be construed to require that intoxication be the proximate cause, because from the standpoint of legal causation that would really amount to sole cause. . . . That it may have been or was caused by other things also, proximately or otherwise, is immaterial.

*Id.* At the time, the Court was construing a version of our voluntary intoxication statute that did not require the intoxication to be the "proximate cause primarily" leading to the injury.

The Court further explained that:

> Since in the ordinary course of things a motor vehicle under the exclusive control of the driver does not run off the road if he is exercising ordinary care, the occurrence of such an event gives rise to a rebuttable presumption that it was caused by the driver's negligence.

*Id.* (*citing Eaton v. Swinford*, Ky., 424 S.W.2d 118 (1968)).

Essentially, R & T wants this Court to apply the *Woosley* rationale to this case and reason that because in the ordinary course of construction work experienced construction workers do not fall off ladders if they are exercising ordinary care, the presumption becomes that Aguirre's fall is attributable to his own negligence, *i.e.* his alleged intoxication. This presumption is like the ALJ's conclusion — that a lack of evidence explaining why Aguirre fell means that it could only have been due to his intoxication. But *Woosley* interprets an entirely different version of the intoxication defense, not the version that is applicable here. One year after the *Woosley* decision the legislature changed

14

the language of the intoxication defense statute to provide a defense only if an injury was "proximately caused primarily" by an employee's voluntary intoxication.[5]

This Court discussed the statutory amendment in *Campbell v. City of Booneville*, 85 S.W.3d 603 (Ky. 2002), noting that the 1972 amendment addressed the issue of multiple causation — a problem that concerned the Court in *Woosley*. The legislature chose to provide a different standard, specifically requiring that intoxication be the primary cause of a work-related injury. "In other words, if a worker's voluntary intoxication was the primary cause of an injury, it is immaterial whether other factors contributed to causing it. The injury is not compensable under KRS 342.610(3)." *Id.* at 606.

Ultimately, the medical opinions in this case cannot support dismissal of the claim, even when paired with the inferences made by the ALJ. R & T failed to meet its burden of proving that the injury was proximately caused primarily by Aguirre's intoxication. The ALJ impermissibly shifted the burden, essentially requiring Aguirre to prove other proximate causes of the accident. The evidence and inferences drawn therefrom do not conform to the evidentiary standards in effect at the time of the claim, and do not comply with our caselaw which requires substantial evidence.

---

[5] As noted, the intoxication defense statute was changed again in 2018. See n.1 *infra*.

15

## CONCLUSION

Because the ALJ's decision was not supported by substantial evidence, we affirm the Court of Appeals.

All sitting. Minton, C.J.; Hughes, Keller, Lambert, Nickell, and Wright, JJ., concur. VanMeter, J., concurs in result only.

COUNSEL FOR APPELLANT:

James Gordon Fogle
FOGLE KELLER WALKER, PLLC

COUNSEL FOR APPELLEE,
BERNABE AGUIRRE:

Jeffrey Thomas Sampson
THE SAMPSON LAW FIRM

16