# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: DECEMBER 16, 2021
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2021-SC-0096-WC

O'REILLY AUTOMOTIVE STORES, INC.        APPELLANT


ON APPEAL FROM COURT OF APPEALS
NOS. 2019-CA-1852 & 2020-CA-0035
V.        WORKERS' COMPENSATION BOARD
NO. WC-14-89885


TONY ERNSPIKER; THE KENTUCKY        APPELLEES
WORKERS' COMPENSATION BOARD;
HONORABLE STEPHANIE L. KINNEY,
ADMINISTRATIVE LAW JUDGE;
LOUISVILLE ORTHOPAEDIC CLINIC &
SPORTS REHABILITATION; AND J. STEVE
SMITH, M.D.


**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

O'Reilly Automotive Stores, Inc. appeals from a Court of Appeals decision

that affirmed an award of workers' compensation benefits to Tony Ernspiker.

The Administrative Law Judge's order that found Ernspiker's injuries were

work-related and awarded benefits has been affirmed by the Workers'

Compensation Board and the Court of Appeals. Likewise, for the reasons

below, we affirm.

# I. BACKGROUND

Tony Ernspiker (Ernspiker) was first injured while working at O'Reilly Automotive Stores, Inc. (O'Reilly) in September 2013. Ernspiker injured his right shoulder, wrist, and elbow while trying to keep a stack of rotors from falling. O'Reilly does not dispute that these injuries were work-related. He was treated for these injuries throughout 2014 with shoulder surgery, carpal tunnel release, and drainage of the elbow. Following these treatments, Ernspiker developed numbness in his right ring finger. This numbness was discovered to be a symptom of cubital tunnel syndrome.[1] To treat this, Ernspiker underwent two surgeries: a cubital tunnel release, and then a revision of cubital release. O'Reilly argued that the cubital tunnel syndrome was not caused by Ernspiker's work injury or its treatment. However, the Administrative Law Judge (ALJ) determined that Ernspiker's cubital tunnel syndrome was caused by his work-related injury. The ALJ therefore found that the two surgeries to treat it were compensable.

Then, in 2015, Ernspiker suffered another work-related injury. The cause of this injury is not disputed by O'Reilly, either: while attempting to lift a

---

[1] Cubital tunnel syndrome occurs when there is ulnar nerve compression at the elbow. The ulnar nerve is one of the three main nerves in a person's arm and travels from the neck into the hand. The ulnar nerve can become constricted at several places, but the most common place for compression of the nerve is behind the inside part of the elbow. Numbness and tingling in the hand and fingers are common symptoms of cubital tunnel syndrome. Am. Acad. of Orthopaedic Surgeons, *Ulnar Nerve Entrapment at the Elbow (Cubital Tunnel Syndrome)*, ORTHOINFO, https://orthoinfo.aaos.org/en/diseases--conditions/ulnar-nerve-entrapment-at-the-elbow-cubital-tunnel-syndrome/ (last modified Aug. 2020).

car battery at work, Ernspiker injured his left shoulder. This injury initially required a rotator cuff repair. However, while Ernspiker recovered from the surgery, he re-injured the shoulder, necessitating a second rotator cuff surgery and a reverse total shoulder arthroplasty. O'Reilly petitioned the ALJ regarding the re-injury and resulting surgeries, claiming that they did not stem from the original work-related injury. O'Reilly argued that the subsequent surgeries should not be compensable.

The ALJ determined that the cause of Ernspiker's subsequent shoulder tear was directly related to his previous injury. In so finding, the ALJ determined that the subsequent surgeries were compensable. Additionally, the ALJ found that Ernspiker's level of Permanent Partial Disability (PPD) and Temporary Total Disability (TTD) had increased based on Ernspiker's new injuries. O'Reilly argues that because Ernspiker's injuries were not caused by his work-related injuries or their treatment, the increase in Ernspiker's PPD and TTD is likewise in error.

## II. STANDARD OF REVIEW

"The ALJ has the sole discretion to determine the quality, character, and substance of the evidence and may reject any testimony and believe or disbelieve various parts of the evidence regardless of whether it comes from the same witness or the same party's total proof." *Wilkerson v. Kimball Int'l, Inc.*, 585 S.W.3d 231, 235 (Ky. 2019) (citing *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418, 419 (Ky. 1985)).

3

"Where the party with the burden of proof was successful before the ALJ, the issue on appeal is whether substantial evidence supported the ALJ's conclusion." *Whittaker v. Rowland*, 998 S.W.2d 479, 481 (Ky. 1999) (citation omitted). We therefore only reverse where the ALJ's decision is not supported by "substantial evidence of probative value." *Wilkerson*, 585 S.W.3d at 236. "Substantial evidence means evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Smyzer v. B.F. Goodrich Chem. Co.*, 474 S.W.2d 367, 369 (Ky. 1971) (citation omitted).

### III.   ANALYSIS

### A.   Right Shoulder & Arm Injury

After Ernspiker injured his right shoulder and arm in 2013, he underwent two initial surgeries: one rotator cuff surgery and one right carpal tunnel release. O'Reilly paid for both surgeries. After these, however, Ernspiker developed a further injury. He complained of numbness in his right ring finger. This was identified by his doctors as cubital tunnel syndrome. When Ernspiker sought treatment for the cubital tunnel syndrome, O'Reilly disputed its work-relatedness. Despite O'Reilly's protest, Ernspiker received cubital tunnel release surgery and a cubital tunnel revision. He requested compensation for each.

In determining whether the cubital tunnel syndrome was related to Ernspiker's original injury, the ALJ considered medical evidence from his treating physician at the time, Dr. Gabriel. Dr. Gabriel's initial records indicate

4

that he was unsure about the source of Ernspiker's sudden onset of cubital tunnel syndrome. After a thorough review of Ernspiker's history, however, Dr. Gabriel wrote a detailed medical analysis that Ernspiker's cubital tunnel syndrome was proximately caused by Ernspiker's prior two surgeries, both of which were work-related. The ALJ was "impressed with Dr. Gabriel's narrative report and note[d] Dr. Gabriel is in the best position to address causation on the issue of [Ernspiker's] ulnar nerve condition[2] due to his position as [Ernspiker's] treating physician" at the time. The ALJ thus adopted Dr. Gabriel's analysis and therefore found causation for this injury. The ALJ determined that O'Reilly must compensate Ernspiker for the surgery.

As noted above, the ALJ is the finder of fact in workers' compensation claims. Causation of injury is a factual issue. *See Ford Motor Co. v. Jobe*, 544 S.W.3d 628, 633 (Ky. 2018) (citation omitted). Here, the ALJ considered multiple doctors' records. Within her discretion, she decided that Dr. Gabriel was most credible. Using the evidence provided by that doctor, the ALJ awarded compensation to Ernspiker**.** O'Reilly argues that the ALJ's opinion was unsupported because other medical opinions were contradictory to Dr. Gabriel's. However, when an ALJ makes a decision based on "substantial evidence," evidence that might have supported a contrary decision is an inadequate basis for reversal on appeal. Here, the ALJ weighed the evidence

---

[2] The ulnar nerve condition that the ALJ mentions here is Ernspiker's cubital tunnel syndrome.

and supported her decision with "substantial evidence" of causation, and thus we affirm the ALJ's decision on this issue.

### B.      Left Shoulder Injury

Ernspiker injured his left shoulder in September 2015, two years after the original injury to his right shoulder. The injury to his left shoulder also required rotator cuff surgery. Following the surgery, while Ernspiker was in recovery, he attended a concert without wearing his sling. At the concert, a woman ran into him.[3] He complained thereafter of increased pain in his left shoulder for several weeks, as is noted by Dr. Smith (his treating physician) and by his physical therapy notes. Weeks after the incident at the concert, however, Ernspiker was at physical therapy when his shoulder loudly popped. He complained to Dr. Smith about the incident. Although Dr. Smith's treating notes mention this event multiple times (it apparently prompted Dr. Smith to take an MRI of Ernspiker's shoulder), Ernspiker's physical therapy notes do not mention the event. Because of the injury from the "pop," Ernspiker noted severe pain in his shoulder. A scan of his shoulder revealed a tear in his rotator cuff. Dr. Smith recommended surgery (which was performed subsequently on the shoulder) followed by a shoulder replacement.

O'Reilly argued that Ernspiker's left shoulder tear was a direct result of the concert incident and Ernspiker's failure to follow medical advice to wear his

---

[3] It is unclear from the record how exactly the woman at the concert interacted with Ernspiker. Originally, Ernspiker told his doctor and physical therapist that the woman fell, and he caught her. In his deposition on the current matter, however, Ernspiker claims that the woman bumped into him.

sling. It further argues that there is insufficient evidence to support a finding that the "pop" at physical therapy either happened, or if it did happen, caused the tear. In so arguing, O'Reilly heavily relied upon the opinion of Dr. Gabriel, Ernspiker's former doctor.[4]

Ernspiker, by contrast, relied upon the opinion of his physician, Dr. Smith, who treated him throughout his recovery from his initial left shoulder injury. Dr. Smith noted in his medical reports for Ernspiker's MRI that Ernspiker "was doing very well until 3 weeks ago he was pulling a baton in therapy and felt a pop in his left shoulder and has had pain ever since." Dr. Smith wrote in several reports about the pop at physical therapy as the causal event of Ernspiker's tear. Another doctor, Dr. Bilkey, agreed with Dr. Smith's assessment after an independent medical examination. Other doctors who examined Ernspiker and his history, including Dr. Gabriel and Dr. Best (another doctor consulted by O'Reilly), opined that the cause of Ernspiker's injury was the concert incident.

In her decision, the ALJ noted the difficulty of determining cause under the facts and circumstances of this claim. After grappling with the evidence, however, the ALJ found that the opinions of Dr. Smith and Dr. Bilkey were most credible on the issue. The ALJ reasoned this to be true because Dr. Smith, as Ernspiker's treating physician, had the most contact with Ernspiker

---

[4] Noted above, Dr. Gabriel treated Ernspiker's *right* side. Dr. Smith treated Ernspiker's *left* side. Interestingly, O'Reilly asks this Court to take Dr. Gabriel's evidence as credible on the side he did *not* primarily treat, but to ignore or question his evidence regarding the side he *did* primarily treat.

before and after each incident, and his opinion on causation was likely more accurate. Dr. Bilkey's medical opinion on causation after his own assessment of Ernspiker echoed the opinion of Dr. Smith.

The ALJ considered O'Reilly's evidence and the contrary medical opinions rendered by Dr. Gabriel and Dr. Best on Ernspiker's left shoulder injury. As stated above, she noted the difficulty in weighing the evidence with which she was presented. She ultimately determined that Dr. Smith and Dr. Bilkey were more credible. She used their opinions as "substantial evidence" to support an award. We must therefore affirm the ALJ's decision that the second tear to Ernspiker's left rotator cuff was caused during treatment of his work-related injury. Consequently, his surgeries are compensable.

## C. Benefits Awarded

In its reply brief to this Court, O'Reilly acknowledged that its remaining arguments regarding PPD and TTD benefits are "dependent on reversal" of the ALJ's findings of causation. This is because "[t]he assignment of PPD benefits and the award of TTD benefits [] will only be reversed if [we find] for O'Reilly on its first argument." Given this concession, and because we have affirmed the ALJ's decision regarding injury and causation, we hold that O'Reilly's arguments regarding the awards are unfounded. Accordingly, we affirm the ALJ's decision as to TTD and PPD benefits, but for a miscalculation of PPD upon which the parties agree.[5]

---

[5] Regarding PPD benefits, both parties agreed prior to the Workers' Compensation Board hearing that the ALJ's original calculation was incorrect. They have agreed to an alternate calculation of PPD benefits, for which the ALJ's decision

## IV. CONCLUSION

In determining the cause of Ernspiker's injuries and the amount of his benefits, the ALJ considered medical evidence including records and depositions from Drs. Gabriel, Smith, Best, Bilkey, and Burgess. In coming to her conclusions, the ALJ primarily relied upon the medical opinions of Ernspiker's treating physicians for his injuries. These records constitute "substantial evidence" and comport with the ALJ's findings. Accordingly, and for the reasons above, we affirm the Court of Appeals.

All sitting. All concur.

---

was vacated and remanded in order to institute the correct calculation. We affirm the decisions of the Board and the Court of Appeals to vacate and remand for the new calculation of benefits agreed to by the parties.

9

COUNSEL FOR APPELLANT:

Mark Reynolds Bush
Clarke David Cotton
Samantha Steelman
Reminger Co., L.P.A.


COUNSEL FOR APPELLEE, TONY ERNSPIKER:

Wayne Charles Daub

APPELLEE, KENTUCKY WORKERS' COMPENSATION BOARD:

Michael Wayne Alvey
Chairman

APPELLEE, ADMINISTRATIVE LAW JUDGE:

Honorable Stephanie Letitia Kinney

APPELLEE, LOUISVILLE ORTHOPAEDIC CLINIC & SPORTS REHABILITATION:

Pro Se

APPELLEE, J. STEVE SMITH, M.D.:

Pro Se