# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED:  SEPTEMBER 22, 2022
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2021-SC-0410-WC

TRANE CO.                                                                                       APPELLANT

ON APPEAL FROM COURT OF APPEALS
NO. 2021-CA-0134
WORKERS' COMPENSATION BOARD
NOS. WC-2020-00103 & 2020-0104

V.

TOMMY HAFLEY;                                                                               APPELLEES
HONORABLE GRANT S. ROARK,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

This case is before the Court on appeal as a matter of right[1] by Trane Co., the Appellant, from the Court of Appeals' ruling affirming the finding that Tommy Hafley, the Appellee, is permanently and totally disabled. Trane Co. first argues that it was clearly erroneous for the ALJ to rely upon the opinion of Dr. Gilbert to support a finding of a work-related injury; and second, that it was an abuse of discretion and contrary to public policy for the ALJ to find Hafley permanently and totally disabled due to his "voluntary" retirement. For the following reasons, we affirm.

---

[1] Ky. Const. § 115.

## I.    Facts and Procedural Posture

As recounted by the Workers' Compensation Board,

Hafley's Form 101 alleges cumulative trauma injuries to his neck, back, knee and elbow on October 31, 2018, caused by his employment at Trane. Hafley also filed a claim alleging hearing loss due to the repetitive exposure to loud noise in the workplace. By Order dated February 20, 2020, the ALJ consolidated both claims. Hafley submitted the report of Dr. Gilbert and the report and completed medical questionnaire of Dr. Julie Martin, D.C. Trane submitted the independent medical evaluation ("IME") reports of Drs. Rafid Kakel and Daniel Primm.

Hafley testified at a March 30, 2020, deposition and the June 24, 2020, hearing. His deposition testimony establishes he was born on October 26, 1958, and began working for Trane on March 17, 1980. He last worked for Trane on August 31, 2018. Hafley completed the 10th grade and did not obtain a GED. He has no vocational training.

From the ALJ's summary of evidence,

[A]round 20 years of his time there [Trane] was in the stockroom. His duties included running a forklift, running a stacker (a standup forklift type vehicle), pulled parts, lifting boxes weighing 30-50 pounds onto skids, then onto the lifts to move them on to other departments. He claims he did a lot of lifting, pulling, tugging, a lot of walking on concrete, and climbing ladders.

He claims he was subjected to loud noises from all the metal banging and machinery, as well as all the fork trucks running up and down the aisles. He reported that he wore hearing protection 100% of the time.

He reported that he worked approximately 80% of his time running the forklift (50% of that time on the stand up) and the other 20% loading skids.

His current symptoms include lower back pain, he gets a lot of headaches and stiffness in his neck, pain in his left knees for which he wears a brace on his left knee and gets injections every 2-3 months. He stated he cannot walk or sit for long periods of time, or ride in a car for long without standing up. His pain interrupts his sleep. He stated he has pain trying to lift even a sack of potatoes.

2

His last day of work was on October 31, 2018, the day he retired. He applied for social security, which was approved.

Trane has argued in its briefing that the plant Hafley worked at was scheduled to be closed, and that closure plan had been announced to all employees some months before Hafley's retirement. In short, Trane alleges Hafley decided to retire only after finding out the plant he had worked at for most of his adult life was closing down; not because of any cumulative injury or inability to continue working.

As for the reports of the physicians on behalf of Trane, Dr. Kakel evaluated Hafley on May 7, 2020. He diagnosed bilateral osteoarthritis of the knees; degenerative disease of the cervical spine; degenerative disease of the lumbar spine; and left elbow gouty arthritis. The ALJ summed up Dr. Kakel's opinion:

> There is no evidence of cumulative trauma injuries to the cervical spine, lumbar spine, knees or left elbow, which are related to his employment with Trane. He found no evidence of any work related injuries or any specific work activities that would have accelerated any knee, neck, back or elbow conditions beyond what would normally be expected to be seen in a male of his age.
>
> He assigned impairments ratings for the lumbar spine of 8%, the cervical spine of 8%, the left elbow 0%, left knee 8% and 0% for the right knee, and 2% for pain. This translates to a 24% WPI. However, in his opinion, none of the impairments are due to cumulative trauma from his employment with Trane.
>
> …
>
> In his opinion, Mr. Hafley does not retain the physical capacity to return to the previous type of work he performed. He could work with permanent restrictions in a less strenuous type job. He recommends no ladders, crouching, kneeling, no work on uneven surfaces, no lifting of more than 10 lbs. constantly or 20 lbs. occasionally. However, these restrictions are not work related. No malingering or exaggeration were detected.

Dr. Primm evaluated Hafley on May 19, 2020. He only found "age related degenerative changes" with the cervical spine, "consistent with age" and "negative for advanced osteoarthritis, or nerve root compression." He also found "primary osteoarthritis, both knees, aggravated by, what appears to be, a history of congenial tibia vara." The ALJ summarized Dr. Primm's findings as

> Mr. Hafley's diagnosis was not from cumulative trauma from his employment with Trane. The only objective findings are degenerative and congenital in nature, unrelated to his work. He notes that Hafley's work at Trane neither exacerbated, accelerated, or contributed to any of his alleged injuries.

Dr. Primm assessed 8-10% impairment for his knees and recommended restrictions on "prolonged standing, walking or any regular crouching, crawling, or squatting, due to his knee osteoarthritis." Lastly, he believed he could return to his previous type of work.

Dr. Gilbert evaluated Hafley on February 12, 2020. He diagnosed "spinal pain, muscle spasms, cervical and lumbar radiculopathy, in a dermatonal and myotomal distribution with bilateral knee pain and weakness, which is reproducible in the bilateral knee flexors and extensors secondary cumulative traumas over the years." He found all these caused by Hafley's work. He assessed impairment ratings of "15% for cervical, 10% for lumbar[,] 10% for the right knee, 10% for the left knee, and 5% for thoracic, for a combined total WPI of 42%." He restricted Hafley from any heavy manual labor and concluded "Mr. Hafley is 100% occupationally disabled from any occupation for the foreseeable future."

Finally, Dr. Raleigh Jones diagnosed "occupational related, noise induced sensorineural hearing loss. [Hafley] has a 4.7% hearing impairment, which translates to 2% WPI."

The ALJ found permanent harmful changes to Hafley's neck, knees, and lower back, citing Dr. Gilbert and Dr. Kakel. He found these were work-related citing Dr. Gilbert and Hafley's own descriptions of his job duties over 38 years. But the ALJ also concluded that Hafley suffered no work-related injury to his left elbow, noting Dr. Gilbert had failed to provide a rating for it and Hafley had not mentioned it at the final hearing. The ALJ determined the impairment ratings as 8% each for cervical and lumbar impairment, citing Dr. Kakel, and 10% impairment to both knees, citing Dr. Gilbert.

The ALJ then addressed the heart of the appeal now before us—"The real question is whether plaintiff's injuries prevent him from returning to any gainful employment on a regular and sustained basis."[2] The ALJ found permanent and total disability, stating

> The ALJ is persuaded from both Dr. Gilbert and Dr. Kakel that the plaintiff does not retain the physical ability to return to the job he held at the time of his injury. Dr. Gilbert indicated his belief that plaintiff cannot return to any employment, all [sic] Dr. Kakel indicated plaintiff could only return to light duty. However, the ALJ is persuaded plaintiff's age, education and work experience take [sic] it highly unlikely he would be able to attain and retain light duty employment within his physical capabilities. Plaintiff is currently 61 years old, has only a 10th grade education, and most

---

[2] There is a five-step analysis to determine permanent, total disability. *City of Ashland v. Stumbo*, 461 S.W.3d 392 (Ky. 2015). The ALJ cited this case and summarized the steps of this analysis. Because Trane Co. has not argued the ALJ did not comply with this analysis, we see no need to review this area of law in any depth.

of his adult worklife has been with the defendant, to which he cannot physically return, even based on the defendant's expert.

Given plaintiff's advanced age, limited education, and singular work history for the defendant, the ALJ is persuaded plaintiff is not likely to be able to find and maintain suitable employment in a competitive economy. For these reasons, it is determined plaintiff is permanently and totally disabled.

Trane appealed to the Workers' Compensation Board. The Board affirmed the ruling in a thorough and well-written, 34-page opinion. Although the legal conclusions of the Board were correct, its ruling was mainly predicated upon the deference to the ALJ as factfinder and the presence of substantial evidence in the record. Trane appealed to the Court of Appeals. So impressed was the lower court with the Board's analysis that it adopted approximately one-third of it as its own opinion and affirmed. We now address the merits of the appeal.

## II.    Standard of Review

An ALJ has "has the sole discretion to determine the quality, character, and substance of evidence . . . ." *Whittaker v. Rowland*, 998 S.W.2d 479, 481 (Ky. 1999). He "may reject any testimony and believe or disbelieve various parts of the evidence, regardless of whether it came from the same witness or the same adversary party's total proof . . . ." *Id.* "[W]here the party with the burden of proof was successful before the ALJ, the issue on appeal is whether substantial evidence supported the ALJ's conclusion . . . ." *Id.* "Although a party may note evidence which would have supported a conclusion contrary to the ALJ's decision, such evidence is not an adequate basis for reversal on appeal." *Id.* at 482.

6

### III.  Analysis

Trane advances two specific arguments. First, that a finding of permanent and total disability for a voluntarily retired claimant, who never had any work restrictions, is contrary to public policy. Second, that Dr. Gilbert's opinion could not be relied upon by the ALJ because he had an inadequate or inaccurate work history. As to the first argument, Trane states, "Finding someone who has never had any restrictions and who voluntarily retired to be permanently and totally disabled is an egregious abuse of discretion and contrary to the plain language and purpose of the Workers' Compensation Act." But we have held "that a worker's ability to perform his usual occupation is not dispositive of whether he has sustained an occupational disability," and "a worker is not required to undertake less demanding work responsibilities or to quit working entirely in order to establish an occupational disability." *Alcan Foil Products, a Div. of Alcan Aluminum Corp. v. Huff*, 2 S.W.3d 96, 101 (Ky. 1999). Hafley's continued employment for 38.5 years without restrictions, therefore, is simply a factor for the ALJ to consider in determining whether he is permanently and totally disabled. It is not a legal ground to reverse such a finding.

As to the question of retirement, it was answered decades ago in *Inland Steel Co. v. Terry*, where the Court stated,

> We reject the contention that voluntary retirement and removal from the labor market, as such, extinguishes or in any way limits the right to workmen's compensation benefits. While it is true as a general proposition that the ultimate objective of the law is to offset lost earnings, it is accomplished through payment for lost earning power. If an otherwise compensable injury or disease has impaired

7

> a claimant's ability to earn a livelihood, what he actually intended
> to do with his time in the future is immaterial, and the acceptance
> of retirement benefits is irrelevant.

464 S.W.2d 284, 285 (Ky. 1970). This remains good law. Trane argues KRS 342.0011(11)(c) requires a finding of "complete and permanent inability to perform any type of work as a result of an injury[,]" to be awarded permanent and total disability; therefore, Hafley's voluntary retirement and lack of testimony that he could not perform any kind of work precludes the ALJ's finding. But the ALJ specifically cited to the conclusion of Dr. Gilbert that Hafley is 100% occupationally disabled. The Board concluded this was substantial evidence supporting the ALJ, and we agree.

Additionally, we note that whether Hafley "voluntarily retired" because of the plant closure, as Trane alleges, is a question of fact inappropriate for this Court to consider. The ALJ obviously rejected that explanation, despite its facial plausibility, and there simply is nothing in the record demonstrating this rejection was clearly erroneous, compelling us to reverse. *Special Fund v. Francis*, 708 S.W.2d 641, 643 (Ky. 1986). Thus, even if voluntary retirement did preclude the awarding of workers' compensation benefits as a matter of law, we still could not reverse the award at issue since there has been no factual finding that Hafley voluntarily retired and remains capable of employment.

In its second argument, Trane Co. contends reliance upon Dr. Gilbert's opinion was clearly erroneous because he allegedly did not have a full work history of Hafley. Because of this, Trane Co. asserts this case falls under the

8

rule announced in *Cepero v. Fabricated Metals*, 132 S.W.3d 839 (Ky. 2004). In *Cepero*, we affirmed and adopted the reasoning of the Worker's Compensation Board, that

> where it is irrefutable that a physician's history regarding work-related causation is corrupt due to it being substantially inaccurate or largely incomplete, any opinion generated by that physician on the issue of causation cannot constitute substantial evidence. Medical opinion predicated upon such erroneous or deficient information that is completely unsupported by any other credible evidence can never, in our view, be reasonably probable.

*Id.* at 842. Irrefutable is a high bar indeed and our second condition should not be overlooked—"completely unsupported by *any other credible evidence . . . .*" *Id.* (Emphasis added). Trane has failed to meet this burden. The Board found the record devoid of any support for this argument, and so do we. Dr. Gilbert described the work activities of Hafley as "heavy manual labor at train [sic] corporation for 38.5 years." The ALJ explained, "Although his report only ascribes plaintiff's injuries to 'wear and tear' without further elaboration, that description is, in context, Dr. Gilbert's summary of the job duties plaintiff explained to him during the examination, but which were not detailed in Dr. Gilbert's report." This is far from "irrefutable proof" that Dr. Gilbert did not have an accurate work history of Hafley. Moreover, other credible evidence supports Dr. Gilbert's opinion and report. Hafley's testimony of his job duties and the work restrictions put in place by Dr. Kakel both constitute substantial evidence that Hafley did do heavy manual labor. The Court of Appeals (and the Board) correctly held that Dr. Gilbert's terseness in describing the work history only went to credibility, not admissibility.

9

Trane further argues, however, that Hafley did not accurately describe his job duties. It insists that his work was light duty and cites video evidence as proof. Hafley, however, was obviously competent to testify to his own work duties and the ALJ as factfinder was free to believe or reject that testimony. Once again, substantial evidence compels affirmation. Trane Co. further complains the ALJ did not account for this video evidence in reaching his decision. The Board held this particular argument unpreserved as Trane Co. made no specific request for findings of fact on this issue nor raised it in its petition for reconsideration. Because it was not properly preserved for review before the Board, it was not properly before the Court of Appeals nor is it properly before this Court for review. KRS 342.281; *Uninsured Employers' Fund v. Stanford*, 399 S.W.3d 26, 31 (Ky. 2013). The Court of Appeals is affirmed.

Minton, C.J.; Conley, Hughes, Keller, Nickell, VanMeter, JJ., sitting. All concur. Lambert, J., not sitting.

COUNSEL FOR APPELLANT:

Donald J. Niehaus
Walton Niehaus Law, PLLC

COUNSEL FOR APPELLEE:

McKinley Morgan
Dan Scott
Morgan, Collins, Yeast & Salyer

ADMINISTRATIVE LAW JUDGE:

Hon. Grant S. Roark

WORKERS' COMPENSATION BOARD:

Michael Wayne Alvey,
Chairman

11