# IMPORTANT NOTICE
## <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED MAY 28, 2020
NOT TO BE PUBLISHED



## Supreme Court of Kentucky

2019-SC-000319-WC

DATE 6/22/20
A Hutcherson

BARBARA SMITH                                              APPELLANT

ON APPEAL FROM COURT OF APPEALS
V.            CASE NO. 2018-CA-001320-WC
WORKERS' COMPENSATION BOARD NO. 17-WC-00125

BLEDSOE COAL CO.;                                         APPELLEES
WORKERS' COMPENSATION BOARD; AND
HONORABLE CHRISTINA D. HAJJAR,
ADMINISTRATIVE LAW JUDGE

### MEMORANDUM OPINION OF THE COURT

### AFFIRMING

Barbara Smith filed a workers' compensation claim alleging both a single work-related injury and a cumulative trauma injury stemming from her work as a coal miner for thirty years. The Administrative Law Judge (ALJ), having heard the evidence and legal arguments, dismissed both claims. The Workers' Compensation Board (Board) and the Court of Appeals affirmed, finding substantial evidence supported the ALJ's determination that Smith did not sustain work-related injuries. On appeal, Smith argues that the ALJ failed to accurately analyze the evidence and rendered a decision that does not conform with applicable Workers' Compensation laws. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

Barbara Smith began work as a coal miner in 1984 and started working for Bledsoe Coal Company in 1999. Smith served as a safety director and routinely checked oxygen tanks located in various places throughout the mine. She stated that oxygen tanks are stored underground for safety reasons, such as lack of oxygen to the area, and the tanks were checked quarterly. On September 11, 2014 Smith was walking on a crossover, which allows people to get to the other side of the conveyor belt, and a step broke, causing her to fall. She twisted around and hit the ground, falling flat on her back and landing on her rescuer – a six-by-eight oxygen unit about four inches thick with steel casing. It was located at her hip on her belt. She rolled over on her stomach, caught her breath and stood up. She said she could not breathe and felt like her insides were swelling.

After leaving the mines, Smith went to the office, reported the injury and filled out an accident report. She was taken to the company doctor, Dr. Dahhan, who x-rayed her ribs and confirmed they were not broken. Smith testified that a few days after the accident she had a bruise on the upper portion of her right hip and backside. Smith returned to work on September 12, 2014 and continued to work until she was laid off on December 31, 2014. A new coal company took over the coal mine and Smith was informed that she was no longer needed. Smith did not miss a single day of work between September 11 and December 31, 2014. After being laid off, she applied for, and received, unemployment benefits.

At the end of 2015 Smith began experiencing issues with her right knee and soon discovered that her pain stemmed from a back problem. She denied having any pain in her leg or knee prior to the work accident. In April 2016 she saw Denise Bunner, APRN, and her chief complaints were back and right leg pain. Bunner assessed acute right-sided low back pain with radiculopathy and prescribed pain medication. Bunner also ordered an MRI of the lumbar spine and referred Smith to a neurosurgeon. Dr. Jeffrey Jones read the MRI of Smith's lumbar spine taken on May 6, 2016 and noted degenerative disc disease from L3 to S1. The MRI also suggested disc space narrowing with minor bulging and spinal stenosis.

Bunner referred Smith to Dr. David Eggers who examined Smith on June 13, 2016. Her chief complaint was back and right leg pain she claimed to experience since the 2014 work accident. Dr. Eggers performed a laminectomy at the L3-L4 level and discovered a massive cyst that was not visible on the MRI.[1] The surgery was successful, and during a post-surgery evaluation Smith reported that her right leg pain was completely gone, and she had some relief from her low back pain. Bledsoe's workers' compensation carrier paid for the first MRI and surgery but declined to pay for any additional treatment.

---

[1] "Laminectomy is a surgery that creates space by removing the lamina – the back part of a vertebra that covers the spinal canal. Also known as decompression surgery, laminectomy enlarges the spinal canal to relieve pressure on the spinal cord or nerves." *Laminectomy*, MAYO CLINIC (June 13, 2018), https://www.mayoclinic.org/tests-procedures/laminectomy/about/pac-20394533.

On December 12, 2016, six months post-operation, Dr. Eggers noted that the pain switched between her left and right legs. Smith had several follow-up visits with Dr. Eggers and continued reporting leg and hip pain. He performed another laminectomy surgery on January 24, 2017 at the L4-L5 level. Dr. Eggers noted that Smith reported being better for about a week following the surgery, but still reported pain in her right leg. The last time Dr. Eggers saw Smith was on April 19, 2017. The results of a myelogram did not show any nerve compression and Dr. Eggers wondered whether Smith had a problem with her hip joint and recommended an orthopedic examination.

Dr. Bailey Phelps saw Smith for the first time in December 2016 for pre-operative clearance for her second surgery after she was diagnosed with Type-II diabetes. On March 30, 2017 Dr. Phelps examined Smith and noted that she limps, favoring her left hip. After examining the April 2016 MRI of the lumbar spine, Dr. Phelps noted moderate to severe degenerative disc disease, spondylosis and stenosis. She opined that these diagnoses were consistent with "wear and tear" arthritis and cumulative trauma, but also stated that Smith being overweight could contribute to her complaints. She also noted that physical and manual labor can contribute to chronic back pain and arthritis, as shown on Smith's MRI. Dr. Phelps referenced the July 2016 surgery and stated that it fully alleviated Smith's radicular pain, suggesting that the pain Smith experienced during the March 30, 2017 visit was a result of the work injury.

4

On January 17, 2017 Smith filed a claim with the Department of Workers' Claims (DWC) alleging she injured her low back in the fall at work. On February 21, 2017, Bledsoe filed a response and motion to dismiss the claim, alleging that Smith failed to file her claim within the applicable two-year statute of limitations, among other things. On March 10, 2017, the ALJ issued an order passing the statute of limitations argument to consideration of the merits of the claim. Smith filed a motion to amend her claim on April 5, 2017 to include a to cumulative trauma injury from working in the coal mines from 1984 through December 31, 2014.

At her deposition on April 3, 2017, Smith testified that she is still not able to use her right leg and continues to have radiating pain. She experiences the pain most often at night when she is trying to rest, and if she sits too long or walks too much. She now uses a cane to walk. Smith testified that she asked Dr. Eggers if the cyst he discovered during the first surgery was related to her work in the mines, and he said "probably." Smith prepared an affidavit stating that she continued her ordinary work duties until December 31, 2014. She worked in and around underground mines which involved pushing, pulling, bending, stooping, lifting, shoveling and stairclimbing, even though she admitted experiencing some soreness.

Dr. David Muffly conducted an independent medical examination (IME) of Smith on May 31, 2017. Smith primarily complained of right buttock pain and right thigh weakness, noting that her symptoms were worse at the end of the day and increased with prolonged sitting or prolonged walking. She

reported that she could not walk more than fifteen minutes or lie on her right side. She also stated that she had difficulty bending, lifting and twisting.

Dr. Muffly diagnosed chronic low back pain referred into the right leg after low back injury with minimal improvement post-surgical intervention, multiple level degenerative disc disease, and spinal and neuroforaminal stenosis. He opined that the work injury and cumulative trauma caused Smith's impairment. Dr. Muffly opined that Smith reached maximum medical improvement on May 31, 2017. He stated that Smith had restricted range of motion in her lumbar spine and assigned a whole person impairment of 26%, using the range of motion method of assessing her lumbar spine. Dr. Muffly apportioned 50% of this impairment to the September 11, 2014 work injury and 50% to cumulative trauma caused by her occupation. He also opined that Smith's degenerative changes and spinal stenosis are more than expected for someone her age. He recommended permanent restrictions of lifting/carrying no more than fifteen pounds, limited distance walking up to ten minutes at a time, limited sitting thirty minutes at a time, and no bending or stooping. Dr. Muffly did not believe Smith could return to her coal mining occupation.

Dr. Timothy Kriss conducted an IME on June 7, 2017. During the examination, Smith reported her current symptoms as right-sided low back pain, right thigh pain, and being unable to walk at times due to pain. Dr. Kriss stated that Smith attributed all her symptoms to the September 11th work injury. However, when specifically questioned she did state that in addition to

the work injury she believed that working in the mines for thirty years contributed to her current pain.

Dr. Kriss opined that the complete absence of any need for medical treatment for low back, right hip, thigh or knee pain for so long after the September 11, 2014 accident indicates that these symptoms cannot possibly be attributed to Smith's fall at work.[2] After reviewing Smith's medical and treatment history Dr. Kriss noted that Smith complained of pain in her chest after her fall, and Dr. Dahhan noted that she had full range of motion in all major joints. Additionally, although Smith sought treatment for knee and leg pain in 2016, she stated the pain had only been present for two months and did not complain of any low back pain at the time. Dr. Kriss concluded that the injury did not cause her current complaints or cause the complaints for which she underwent surgery in 2016, and that Smith's back condition is not related to work in any way.

Dr. Kriss stated that there is no evidence of a cumulative, repetitive, incremental work-related injury to Smith's lumbar spine, hip or lower extremities. He opined that there is zero evidence of work-related etiology so certain as to be within a reasonable degree of medical probability. He cited twin studies indicating that a twin with a history of occupational exposure to

---

[2] Dr. Kriss's report actually states that Smith did not seek treatment for twenty-one months after the September 11th injury, and during that medical visit she stated she experienced the knee pain for two months. He lists a January 2016 visit with an APRN and Dr. Phelps. Therefore, it was actually sixteen months after the injury that she sought treatment for knee pain. This discrepancy in the calculation of months is harmless.

lifting, twisting and awkward postures did not result in any more lumbar degeneration than the twin with little or no such exposure. He further stated that Smith's spine degeneration is within normal range for her age.

Dr. Kriss stated that Smith remains highly symptomatic in her right hip and that he would not return her to work at this time. He opined that even though she needed an orthopedic evaluation and treatment, the treatment would not be related to her work injury. According to Dr. Kriss, Smith reached maximum medical improvement on January 11, 2015 from the temporary musculoskeletal strain/contusion stemming from the September 11, 2014 work accident.

The ALJ relied on Dr. Kriss in concluding that Smith sustained a temporary musculoskeletal strain/contusion on September 11, 2014, but that there was no compensable injury. The ALJ also determined that the work accident did not cause Smith's low back, hip and leg complaints for which she underwent surgery. The ALJ was not convinced that cumulative trauma caused or hastened the degenerative conditions in Smith's low back. Smith was able to work full-time, full duty until she was laid off and did not have back complaints until over a year after she stopped working for Bledsoe.

The ALJ recognized Dr. Eggers' opinion that heavy manual labor, like the labor performed by Smith, hastens lumbar degenerative disease, and that Dr. Phelps opined that Smith's results were consistent with cumulative trauma. However, the ALJ determined that none of these doctors addressed the issues raised by Dr. Kriss, such as the fact that Smith worked full time with no back

8

or leg complaints until more than one year after she stopped working. Therefore, Smith did not meet her burden of proving a single work-related injury or a cumulative trauma injury and both claims were dismissed accordingly. The ALJ also determined that because Smith did not file her claim within two years of the September 11, 2014 injury her claim is barred by the statute of limitations. Smith filed a petition for reconsideration which was denied.

Smith appealed to the Workers' Compensation Board. The Board first reviewed the ALJ's dismissal based upon Smith's failure to timely file her claim and expressed concern over whether notice and filing requirements pursuant to KRS 342.038, 342.040 and 342.185 were satisfied. However, the ALJ also dismissed Smith's claims for both the acute and cumulative trauma injuries based upon the merits of the claim. Therefore, the ALJ's finding regarding the procedural dismissal of the claim based on the statute of limitations at most was harmless error. The Board also concluded that the evidence does not compel a finding that Smith sustained a permanent injury either from her fall or from her thirty years working as a coal miner. The Board specifically pointed to the fact that although Smith received treatment from Dr. Dahhan after the accident, there is no evidence that any additional treatment was sought until April 2016. The Board affirmed the ALJ's opinion and order.

Smith appealed to the Court of Appeals. The Court of Appeals agreed with the Board's conclusions on the merits of the case and declined to address the statute of limitation issue. The Court of Appeals found that the ALJ

9

understood all evidence before she rendered her opinion and that the ALJ was simply more persuaded by Bledsoe's evidence, primarily Dr. Kriss's report. In affirming the Board's decision, the Court of Appeals concluded that the medical evidence supported the ALJ's legal conclusion regarding causation. Smith now appeals to this Court.

## ANALYSIS

This case involves two "injuries" – the injury stemming from the September 11th work accident and a cumulative trauma injury stemming from Smith's thirty years employed as a coal miner. We note that the ALJ dismissed Smith's claim regarding the September 11th work injury based on the two-year statute of limitations but also because there was insufficient evidence that Smith's fall caused her complaints leading to treatment or that she sustained any permanent injury from the fall. Kentucky Revised Statute (KRS) 342.185(1) provides

> Except as provided in subsections (2) and (3) of this section, no proceeding under this chapter for compensation for an injury or death shall be maintained unless a notice of the accident shall have been given to the employer as soon as practicable after the happening thereof and unless an application for adjustment of claim for compensation with respect to the injury shall have been made with the department within two (2) years after the date of the accident . . . .

According to KRS 342.185(1), Smith had two years from September 11, 2014 to file her claim.[3] She did not file the claim until January 17, 2017, well

---

[3] Throughout these proceedings the parties have only discussed the statute of limitations issue as it pertains to the single work-related injury claim, 2014, not the cumulative injury claim.

10

beyond the two-year statute of limitations. In response to Bledsoe's motion to dismiss based on the statute of limitations, Smith argued that Bledsoe never notified the DWC as required by KRS 342.038(1), which requires an employer to keep record of all employee injuries received in the course of employment. The statute further requires that

> [w]ithin one week after the occurrence and knowledge . . . of an injury to an employee causing his absence from work for more than one (1) day, a report thereof shall be made to the department in the manner directed by the commissioner through administrative regulations.

The Board was troubled by the ALJ's dismissal based on the statute of limitations, noting the complexity of the case, questioning whether Bledsoe provided notice to the DWC pursuant to KRS 342.038, and considering whether the statute of limitations should have been tolled. However, the Board concluded that because the ALJ also dismissed Smith's claim on the merits, any error in the finding regarding procedural dismissal was harmless. The Court of Appeals agreed with the ALJ on the merits of the claim and declined to review the statute of limitations issue.

The Board noted that failure to fulfill the requirements of KRS 342.038 and KRS 342.040(1) requires a determination of whether the two-year statute of limitations should be tolled. KRS 342.040(1) states in part:

> . . . If the employer's insurance carrier or other party responsible for the payment of workers' compensation benefits should terminate or fail to make payments when due, that party shall notify the commissioner of the termination or failure to make payments and the commissioner shall, in writing, advise the employee or known dependent of right to prosecute a claim under this chapter.

11

In *J & V Coal Co. v. Hall*, 62 S.W.3d 392, 394–95 (Ky. 2001), this Court considered how these statutes work together for use in assessing whether a claim is time barred:

> KRS 342.185 provides that a claim must be filed within two years of the date of accident or within two years of the last payment of voluntary income benefits, whichever is later. It has long been recognized that KRS 342.185 operates together with KRS 342.040(1) and tolls the period of limitations until after the payment of voluntary income benefits ceases in order to protect injured workers from being lulled into a false sense of security by receiving such payments and, therefore, failing to actively pursue a claim. *See City of Frankfort v. Rogers*, Ky. App., 765 S.W.2d 579, 580 (1988). Likewise, KRS 342.040(1) clearly requires an employer who fails to pay income benefits that are due to notify the commissioner of such failure. An employer who fails to comply with KRS 342.040(1) is not permitted to raise a limitations defense because its action effectively prevents the commissioner from complying with its duty under KRS 342.040(1) to notify the worker of his right to prosecute a claim and of the applicable period of limitations. *Id.* By requiring an employer to file a Form SF-1 when an injured worker misses one day of work due to a work-related injury, KRS 342.038(1) puts the employer on record as admitting the existence of the injury. This prevents the employer from later manufacturing a limitations defense by denying knowledge of the injury and asserting, therefore, that it had no obligation under KRS 342.040(1) to notify the commissioner that it either terminated or failed to pay income benefits that were due.

According to Smith's own testimony, she did not miss any work because of the work accident. She testified that she did not miss a single day of work from September 11, 2014 until she was laid off by Bledsoe on December 31, 2014. So, it appears that because Smith did not miss work, the filing requirement of KRS 342.038(1) is not triggered. This Court analyzed KRS 342.038 in *H.E. Neumann Co. v. Lee*, 975 S.W.2d 917, 920 (Ky. 1998), and stated that "once the employer herein had notice that claimant had missed more than one day of work as the result of an alleged work-related injury, it

12

had the duty of filing a first report of injury with the board within one week." Here, Smith missed no work because of the September 11th incident so Bledsoe was not under any obligation according to KRS 342.038 to file an injury report with the DWC, and Smith was not entitled to notice of her right to prosecute a claim under KRS 342.040.

In *H.E. Neumann Co.*, this Court further reasoned that "when the employer failed to make voluntary payments after claimant was absent from work for seven days, it had the duty of notifying the board that no benefits would be paid so that the board could notify claimant regarding the applicable statute of limitations."[4] 975 S.W. 2d at 920. Again, Smith did not miss any work because of the September 11th incident, rendering this statute inapplicable. Further, no payments were due under KRS 342.040(1) because there was no agreement or adjudication requiring benefits payments, rendering this statute inapplicable.[5] While Smith correctly states that a statute of limitations can be tolled if an employer fails to comply with the notice

---

[4] In *H.E. Neumann Co.*, the Court cited the 1990 version of KRS 342.040, which placed an obligation on the employer to notify the board of any termination of benefits payments. The current version of this statute requires notice to the Commissioner of the Department of Workers' Claims.

[5] *See Fox v. Sam's Club*, 2015 WL 9243864, No. 2015-SC-000136-WC, (Ky. Dec. 17, 2015), where this Court explained that KRS 342.040(1) does not compel an employer to pay voluntary permanent partial disability (PPD) benefits after a period of disability has passed. The statute instead describes the time period for which PPD benefits are to be paid and imposes penalties if those requirements are not met. *Id.* at *2. "Our Workers' Compensation Act does not impose a duty to pay permanent income benefits absent ALJ approval of a Form 110 settlement agreement pursuant to KRS 342.265(1), or until after the filing of a Form 101 when liability is dictated by the award in an ALJ Opinion." *Id.*

requirements of KRS 342.038 and KRS 342.040, tolling is inapplicable here because no notice requirements were triggered.

The Board's opinion states that "[a]rguably, when Bledsoe paid for that surgery, an obligation was created to file a notification with the Kentucky Department of Workers' Claims that it was denying or refusing to pay TTD benefits, which may result from recovery from the surgery." The Board noted that there was no evidence that Bledsoe was ever presented with a request for payment of TTD benefits. Regardless of a request, this payment for a surgery does not constitute an "income benefit" under KRS 342.0011. Instead, it is a medical benefit. Both definitions are outlined in KRS 342.0011, which states:

> (12) "Income benefits" means payments made under the provisions of this chapter to the disabled worker or his dependents in case of death, excluding medical and related benefits;
> (13) "Medical and related benefits" means payments made for medical, hospital, burial, and other services as provided in this chapter, other than income benefits;

In sum, Smith did not miss any work because of the accident, did not receive voluntary income benefits from Bledsoe, and showed no signs of injury or impairment from September 11, 2014 through her last day of work with Bledsoe. As a result, Bledsoe was not required to provide any notice to the DWC. Therefore, the ALJ properly concluded that Smith's claim for the single work-related injury on September 11, 2014 was barred by the statute of limitations.

The Board and the Court of Appeals were ambiguous in their treatment of the statute of limitations issue. However, both held that even if the ALJ's determination regarding the statute of limitations was erroneous it was

14

harmless because the ALJ dismissed Smith's single injury claim based on the medical evidence of record. In any event, we recognize that the ALJ, the Board and the Court of Appeals primarily focused on the underlying merits of Smith's claims in reaching their decisions. Therefore, we proceed to discuss the issues regarding the merits of the claim.

Smith argues that the ALJ failed to accurately analyze the evidence and that the decisions of the reviewing authorities thus far do not conform with the Workers' Compensation Act and precedent. On appellate review, this Court must determine whether substantial evidence of probative value supports the ALJ's findings. *Whittaker v. Rowland*, 998 S.W.2d 479, 481-82 (Ky. 1999). Substantial evidence is evidence of "substance and relevant consequence" having fitness to induce conviction in the minds of reasonable people. *Miller v. Tema Isenmann, Inc.*, 542 S.W.3d 265, 270 (Ky. 2018); *see also Gray v. Trimmaster*, 173 S.W.3d 236, 241 (Ky. 2005) (if the ALJ finds against the party having the burden of proof, the appellant must "show that the ALJ misapplied the law or that the evidence in her favor was so overwhelming that it compelled a favorable finding"). In dismissing Smith's claims, the ALJ primarily relied on the report of Dr. Kriss. Smith argues that the ALJ misinterpreted the medical evidence and improperly relied on opinions that were formed based on false and incorrect medical information. We now consider whether these medical opinions constitute substantial evidence for each of the alleged injuries.

15

## I. The single work-related low back injury on September 11, 2014

After considering all the evidence, the ALJ primarily relied on Dr. Kriss's evaluation and report. Upon review of his report, we agree with the Court of Appeals that this evidence satisfies our standard on appeal. Dr. Kriss, a neurosurgery and spine specialist, performed an independent medical examination on June 7, 2017. Dr. Kriss reviewed all relevant medical records and radiology reports. During the examination, Smith reported right-sided low back pain, right thigh and knee pain, and right hip pain. She also stated she was unable to walk more than fifty feet without experiencing pain and claimed to have very little muscle in her right leg. Notably, Smith attributed all her symptoms to the September 11th work injury. Upon prompting, Smith admitted that working in the mines for thirty years contributed to her current complaints.

Dr. Kriss opined that some sort of degenerative pathology in Smith's right hip is responsible for the bulk of her complaints and is causing a lot of the pain she experiences in her right thigh and knee. He recommended that an orthopedic surgeon evaluate Smith in hopes that a routine surgical procedure on the right hip would alleviate most, if not all, of the pain in the right hip, thigh and knee.

Dr. Kriss noted that, contrary to what Smith told him during the IME, there is no documented low back pain on September 11, 2014. Dr. Dahhan localized her pain to her right anterior chest, which is in the thoracic part of the spine – not the lumbar. Dr. Kriss also highlighted the fact that Dr. Dahhan

ordered imaging of Smith's chest and right ribs, not the lumbar spine, pelvis or hips where her pain currently resides. If a traumatic injury to the lumbar spine was truly responsible for the hip weakness she experiences, then there should have been at least some hip pain or weakness on September 11th and none was reported or recorded.

Smith did not seek medical treatment for a considerable period following her injury,[6] and notably continued to work full-time and full-duty in a physically demanding coal mining position. Smith first sought medical treatment after the work accident for right knee pain and did not complain of low back pain at the time. Dr. Kriss explained that there is no connection between the knee and the lumbar spine. He opined that there was no way this lower extremity complaint in 2016 could be related to a single traumatic event that occurred in September 2014. Further, Dr. Kriss stated that Smith's pain at the time of the IME was completely different than the pain which prompted the first surgery by Dr. Eggers.

Dr. Kriss summarized the medical evidence and his evaluation regarding the September 11, 2014 work accident as follows:

> In other words, Ms. Smith's (L4) distribution pain today is completely different than the distribution which prompted Dr. Eggers to decompress Ms. Smith on July 26, 2016.
> Nor does Ms. Smith ever demonstrate a positive right hip orthopedic examination to any of the medical professionals who examine her in the two years immediately after September 11, 2014.
> With the complete absence of any low/lumbar back pain, any right hip pain, any pelvic pain, any thigh pain, on September

---

[6] *See* n.2.

17

11, 2014 and for the next 21 months thereafter, these symptoms in the lumbar spine and right hip cannot be attributed to the September 11, 2014 fall at work.

When Ms. Smith finally does develop right knee pain for the first time ever 16 months after September 11, 2014, that knee pain has only been present two months and is not associated with any trauma. Therefore the knee pain cannot be from the fall on September 11, 2014.

With the complete absence of any need for medical evaluation or treatment for low back, right hip, pelvis, right thigh or traumatic right knee pain for 21 months after September 11, 2014, when the symptoms finally do manifest so markedly delayed, they cannot possible be attributed to the September 11, 2014 fall at work.[7]

As fact finder, the ALJ has the sole authority to determine the weight, credibility and substance of the evidence. *Square D Co. v. Tipton*, 862 S.W.2d 308 (Ky. 1993). Mere evidence to the contrary is insufficient to require reversal on appeal, *Whittaker*, 998 S.W.2d at 479, because as the party with the burden of proof Smith must show the evidence was so overwhelming that it compelled a finding in her favor. *Special Fund v. Francis*, 708 S.W. 2d 641, 643 (Ky. 1986). Here, the evidence does not compel a finding that Smith sustained a permanent injury from the September 11, 2014 accident. Although Smith complained of back pain in her initial visit with Dr. Dahhan, there is no indication that he treated her for such. Additionally, there is no evidence that any additional treatment for back pain was sought in the remaining three and

---

[7] Again, we reiterate that there may have been a clerical error in Dr. Kriss's calculation of time periods since the September 11, 2014 work accident. It was actually sixteen months after the accident that Smith sought treatment for right knee pain.

a half months of her employment with Bledsoe. The earliest indication that Smith sought treatment for back pain was in April 2016.

The ALJ provided thorough reasoning to support her conclusion, and specifically stated the information she relied on in reaching the result. The ALJ noted that Smith's testimony was convincing, in that she had a bruise on her right upper hip and backside following the injury. Additionally, the ALJ stated that she considered the opinions of Drs. Phelps, Muffly and Eggers but found that they related the work injury to Smith's complaints based on Smith's subjective history of progressive complaints of pain following the fall. The ALJ concluded that Smith's medical records did not support her claim that she had progressive complaints of leg and low back pain. Dr. Eggers agreed that it was not medically probable that the fall caused any injury if the fall occurred years ago and there were no ongoing problems stemming from the incident. Because the ALJ's opinion and order was supported by substantial evidence, no error occurred.

## II. Cumulative trauma injury from thirty years of coal-mining

Smith amended her workers' compensation claim to include allegations that her low back and radiating pain into her leg and hip were caused by cumulative trauma from her work as a coal miner over the course of thirty years. As the claimant, Smith bears the burden of proving every element of a workers' compensation claim. *Magic Coal Co. v. Fox,* 19 S.W.3d 88, 96 (Ky. 2000). This includes medical causation, which must be proved to a reasonable

medical probability with expert medical testimony. *Brown-Forman Corp. v. Upchurch*, 127 S.W.3d 615, 621 (Ky. 2004).

The Court first recognized the compensability of injuries that resulted from cumulative trauma or gradual wear and tear in 1976. *Haycraft v. Corhart Refractories Co.*, 544 S.W.2d 222 (Ky. 1976). Where an individual continues to perform the same repetitive activity after a gradual injury becomes manifest, additional incidents of workplace trauma may well cause additional harmful changes. *Special Fund v. Clark*, 998 S.W.2d 487 (Ky. 1999). In other words, the individual may sustain subsequent gradual injuries. Smith was tasked with proving medical causation and demonstrating that her injury is a result of repetitive, gradual trauma from her work as a coal miner.

The ALJ relied on Dr. Kriss in finding that Smith failed to prove that her complaints are due to cumulative trauma. Dr. Kriss concluded that "there is literally zero evidence of a cumulative/repetitive/incremental work-related injury to Ms. Smith's lumbar spine, hip or lower extremities. Zero." He also stated that back pain cannot result from cumulative trauma if there is no accumulation of back pain. Dr. Kriss explained that because no medical documentation exists to even suggest work-related causation, there is no way to distinguish a person with spine pain caused by any reason other than work and a person with spine pain caused by their employment. His report was detailed and thorough and adequately supports the ALJ's conclusion that Smith did not sustain a cumulative work-related injury.

20

Smith argues that Dr. Kriss' report was based on false information because the report contained an incorrect history of the injury from Dr. Dahhan, who insisted on diagnosing a chest injury despite the history he was given. She suggests either that Dr. Dahhan failed to record her low back complaints during the visit and/or failed to provide competent care by not treating her for low back complaints. Smith points to nothing specific in Dr. Dahhan's notes that suggests he had an incorrect history or failed to treat her for her complaints. If the records were inaccurate Smith could have addressed the error by providing additional testimony such as correspondence from Dr. Dahhan or a deposition. Smith is correct in noting that a physician cannot base his opinion on patient history that is "substantially inaccurate or largely incomplete." *Cepero v. Fabricated Metals Corp.*, 132 S.W.3d 839, 842 (Ky. 2004). However, Smith has pointed to nothing else in the record showing that Dr. Kriss relied on inaccurate or incomplete history, other than the alleged insufficiencies with Dr. Dahhan's treatment report. This simply does not rise to the level of error recognized in *Cepero*.

As with most workers' compensation cases, this case involves conflicting medical opinions and reports. Smith argues that the ALJ discounted and misconstrued the medical evidence, but we disagree. In her opinion the ALJ demonstrated that she thoroughly considered and reviewed all medical evidence in the record. Dr. Eggers testified that Smith reported back pain since 2014 stemming from the fall at work. He stated that falling on a rescuer device is sufficient to result in back pain, and that manual labor like working

21

as a coal miner can hasten degenerative disease. Dr. Eggers also admitted that it is not medically probable that the fall caused the injury if the fall occurred years earlier and there were no ongoing back problems.

Additionally, Dr. Muffly examined Smith and provided testimony in Smith's favor and assessed a permanent impairment, both from the single work accident and cumulative injury. Dr. Phelps opined that Smith's symptoms were consistent with cumulative trauma. The ALJ explained that she considered these doctors' opinions but chose not to rely on them because they based their opinions regarding causation on Smith's subjective history that her complaints began after her fall at work, despite contradiction in her medical records. It is clear that the ALJ considered this evidence but nonetheless concluded that Smith failed to meet her burden of proving work-related cumulative trauma.

"An ALJ may reject any testimony and believe or disbelieve various parts of the evidence . . . . The mere existence of evidence that would have supported a different decision is an inadequate ground for reversal on appeal." *American Greetings Corp. v. Bunch*, 331 S.W.3d 600, 602 (Ky. 2010). Further, "[w]here there is conflicting medical testimony concerning the cause of a harmful change, it is for the ALJ to weigh the evidence and decide which opinion is the most credible and reliable." *Brown-Forman*, 127 S.W.3d at 621. The ALJ acknowledged the contrary medical evidence and competing opinions and appropriately weighed her decision. We agree with the Court of Appeals that

the opinion of Dr. Kriss provides a sufficient evidentiary basis to support the ALJ's conclusions.

## CONCLUSION

After review of the record, we find that substantial evidence supported the ALJ's findings. For the foregoing reasons, we affirm the Court of Appeals decision, which affirmed the Board's decision.

Minton, C.J.; Hughes, Keller, Lambert, VanMeter, and Wright, JJ., concur. Nickell, J., not sitting.


COUNSEL FOR APPELLANT:

Phyllis L. Robinson


COUNSEL FOR APPELLEE,
BLEDSOE COAL CO.:

Gregory Lonzo Little
Matthew Jason Zanetti
FERRERI PARTNERS, PLLC